MARY ARNO v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 40018.—202 S. W. (2d) 787.

Division Two, June 9, 1947.

*Mattingly, Berthold, Jones & Richards* and *Douglas H. Jones* for appellant.

*Louis. E. Miller, Miller & Landau* and *B. Sherman Landau* for respondent.

TIPTON, J.—This is a suit to recover damages for personal injuries received by respondent when, as a passenger on one of appellant's street cars on August 15, 1945, the street car in which she was riding ran into the rear of a standing street car. Appellant's answer admitted the collision. The trial in the circuit court resulted in a judgment of $10,000.00 in favor of respondent. From that judgment, appellant has duly appealed.

Appellant's first assignment of error is that respondent's attempt to introduce improper and hearsay evidence and to discredit her own witness in rebuttal was improper and prejudicial. In rebuttal, the respondent was again placed on the witness stand. The questions asked by her attorney were objected to by the appellant for the reason that the testimony sought to be elicited from this witness was not proper in rebuttal. The same thing occurred when respondent's mother was placed on the stand. This testimony, appellant contended, would tend to contradict respondent's witness, Dr. F. R. Finnigan. The trial court sustained appellant's objections in both instances. Appellant made no further requests for additional rulings by the court. Under these circumstances, there could be no error.

The appellant next contends that the trial court erred by not discharging the jury when respondent wept on the witness stand. When respondent first took the stand she stated that she was celebrating V-J day when she was injured, and that she had a son in the service. At this point she wept. The trial court overruled appellant's motion to discharge the jury. Appellant does not contend that this act of ▆▆▆ respondent was deliberate or willful, or that she sought to influence the jury improperly. The occurrence took place in the presence of the trial court; therefore, it was in a position to determine if the incident had any effect on the jury and if it resulted from premeditation on her part. The exercise of sound discretion by the trial court will not be disturbed on appeal in the absence of evidence of abuse. Murphy v. Fred Wolferman, Inc., 347 Mo. 634, 148 S. W. 2d 481; Borrson v. Missouri-Kansas-Texas R. Co., 161 S. W. 2d 227; Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S. W. 2d 653.

The appellant requested the court to give the following instruction:

"The Court instructs the jury that in considering your verdict you should lay aside all feelings of sympathy or prejudice and decide this case solely on the issues before you and the evidence which you have

heard. You should not penalize the defendant *simply* because there has been an admission of responsibility on its part for the collision mentioned in the evidence but rather your verdict should be *limited* in amount to such a sum as you believe will fairly and reasonably compensate the plaintiff for only such injuries and loss, if any, as you may find directly resulted from said collision."

The instruction was given after the words "simply" and "limited" were stricken out. Appellant contends that the court erred in giving the instruction in its modified form. We have repeatedly held that it is the duty of the trial court "to tell the jury what issues are in the case rather than to tell them what issues are not. Under special circumstances various kinds of cautionary instructions may be given, but even proper cautionary instructions are not a matter of right. They are discretionary with the court." Larey v. Missouri-Kansas-Texas R. Co., 333 Mo. 949, 64 S. W. 2d 681, 1. c. 685. See also Wolfson v. Cohen, 55 S. W. 2d 677.

This is a cautionary instruction. It simply told the jury that they should decide the issues before them on the evidence and should not penalize appellant because it admitted the collision, and that its verdict should be in such a sum as would fairly and reasonably compensate the respondent for only such injuries and losses, if any, that she sustained resulting directly from the collision.

Though the instruction may not have been couched in language as forceful as the appellant desired, it correctly declared the law and the trial court did not err in modifying it.

Appellant contends that the verdict of $10,000.00 is excessive. When respondent was injured she was seated in the street car, talking to two ladies who were with her. When the collision occurred she was thrown to the floor of the street car. She bumped her head and became dizzy, her arm hurt and was bruised and swollen, and her back hurt. She managed to get to the door of the street car and was assisted to the ground by a man. She stood around there until the wrecked street car was moved away. She then boarded the next street car and went to the home of one of the ladies with her where she stayed until about 3:00 A. M. She then drove her automobile to her home alone. She testified that she was nervous and could not sleep, so six days later she went to be examined by Dr. Frank Finnegan. He taped her back and dressed her arm, and gave her the alphatron treatment twice a week for three weeks. The last treatment was given on September 4th. She testified that she had pains in her back, arms and fingers, and that she was nervous and could not write. However, the record shows that three days after the accident she wrote several words on a statement to appellant's claim agent and addressed the envelope in which it was mailed. She saw Dr. Finnegan in January and February of the following year. Prior to this accident she had been treated by him for a low thyroid condition.

Dr. Finnegan testified his examination showed that her right shoulder was bluish, discolored and markedly swollen. She could not raise her arms and for that reason his diagnosis was torn ligaments, also acute bursitis and nervous shock. She was in a very nervous state. He prescribed the alphatron treatment, gave her nerve sedatives, and told her to apply heat and carry her arm in a sling. He gave her two treatments a week for three weeks. He had her X-rayed but the X-rays did not reveal ▮ any fractures. He testified that on September 4, 1945, he discharged her as she had made as much recovery as he could expect, but that a person never fully recovers from acute bursitis. He also testified that a person never fully recovers from a nervous shock, whether caused by physical force or by a death in the family. He further testified that about a year before he had treated her for some vague abdominal discomfort and reducing; she also had some nervous symptoms. She returned to see him in January, 1946, complaining of nervousness, and he gave her a light sedative. He saw her again in February.

Dr. Dan Tucker Miller testified that he examined her shortly before the trial and found that a portion of her spine was fusing together and the intervertebral spaces were narrowing. He testified that her tonsils were diseased, the back wall of her throat congested, that she had an extensive gold bridge and crowns, and that on the left side of her mouth there was some pus absorption. He testified that if he had found the condition up and down her spine he would say it was due to infection, but since it was localized in the area of the injury he thought it was not due to disease. This condition existed from the eighth thoracic vertebra through the first lumbar and, in his opinion, was caused by trauma. This condition was permanent, although it was possible that the pain would be reduced somewhat if the spine would fuse so solidly that it could not bend in that area.

Dr. James F. McFadden examined her on March 28, 1946. He testified that she staggered when walking with her eyes closed; that her reflexes were much increased above normal; his findings indicated that there were structural or organic changes in the central nervous system; and that this condition was permanent.

We have examined the cases relied upon by respondent to sustain the verdict but in each one of them the injuries greatly exceeded the injuries in this case, and in most of them the plaintiff had loss of wages and hospital expenses. This record shows no such losses by the respondent. On the other hand, in the cases cited by the appellant the injuries were not permanent. Previous cases decided are of little value as a guide post for other cases. Her permanent injuries depend more on subjective than objective symptoms, and appear to leave the matter somewhat to speculation and conjecture.

590

We think the verdict is excessive. If respondent will, within ten days, enter a remittitur for $3,000.00 as of the date of the judgment, it will be affirmed; otherwise, the judgment will be reversed and remanded. All concur.