256 S.W.2d 308 (1953)
JOHNSON
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28562.
St. Louis Court of Appeals. Missouri.
March 17, 1953.
Motion for Rehearing or for Transfer to Denied and Opinion Modified April 21, 1953.
*309 Mattingly, Boas & Richards, Lloyd E. Boas, George R. Gerhard and Charles A. Finn, St. Louis, for appellant.
C. Allen Trumbull and William L. Mason, Jr., St. Louis, for respondent.
Motion for Rehearing or for Transfer to Supreme Court Denied and Opinion Modified April 21, 1953.
HOUSER, Commissioner.
This is an action for damages for personal injuries sustained by Mary E. Johnson while alighting from a motorbus operated by St. Louis Public Service Company. Defendant has appealed to this court from a judgment for $7,000 in favor of plaintiff.
Plaintiff asked to be let off the bus at an intersection. The operator pulled the bus to the curb. Plaintiff went to the front door to alight. The operator opened the bus door. As she started to go out plaintiff suddenly felt the door closing on her, on the foreside of her body. At the time the door closed plaintiff's right foot was on the floor level of the bus and her left foot was "going outside the bus." She straightened up and was trying to push the door back off of her, "resisting this door back off of" her through portions of her body. Then she felt the bus swing and jerk and realized that the *310 bus was in motion. The bus moved far enough that when she fell she did not hit the curb but fell in the street flat on her back and on the back of her head. After the doors closed on her the operator opened the doors. That is when she fell from the floor level of the bus to the street. Plaintiff did not know whether the bus was moving or stopped at the time the door was opened. Plaintiff was dazed but not unconscious, nauseated, nervous, in pain, and her head and back hurt. No bones were broken. She was not cut or bleeding but was very badly bruised. Helped up from the street, she was taken home in a cab. Upon arrival she called Dr. Sylvester H. Pranger, who came to the house, examined her, found that she was nervous, sick, excited, and in a bad state of shock. He ordered her to be very quiet and prescribed medicine in the form of tablets and pills for her to take. She went to his office for X-rays and injections which plaintiff took at least twice a week from the date of the accident (July 2, 1951) until trial time (February, 1952).
Plaintiff, 66 years of age, had been employed at City Hospital, Health Division, for ten years prior to the accident. She was in charge of supplies, a job involving considerable physical activity requiring her to receive, pack and put things away. Her earnings were $240 per month. In 1948 plaintiff fell down on the floor of a bus, sprained her back and received contusions of the lumbo-sacral region, coccyx and left phrenal region. A pre-existing condition of hypertrophic spondylitis was aggravated and she suffered nervousness, dizzy spells and shock at that time. Plaintiff had recovered from the aggravation of arthritis caused by the 1948 accident without any "after effects." Her health was good and she was not under the care of a doctor before the 1951 accident. She was able to walk and work and led a perfectly normal life. She returned to work on July 17, 1951 but did not work full time, being unable to perform all her duties. She traveled to work in a taxicab after July 17 whereas before the accident she had customarily used the bus. On September 14 she resigned her employment and has not been employed since.
At the time of trial, seven months after the accident, plaintiff testified that she was still in pain and had not been without pain since the accident. The upper part of her back, her neck, both arms, hands, fingers, shoulders, abdomen and legs all hurt her. She has "awful" pains in her shoulders up into her neck when she tries to lie on her side. When she moves her leg the pain is so severe that she is awakened from her sleep. She does not have the use of her fingers, is unable to make a fist with her left hand, and cannot use her hand "for anything." At first she had no use of her legs but now she can be on them. Her left knee gives her "awful pains" in a certain position. She is unable to raise her arms and cannot get in and out of the bath tub, comb her hair or wash her body, cannot get out of her room without the use of a cane and is obliged to hold onto the furniture while moving about her room, where she now spends most of her time. She is improving but is unable to do the work she did before the accident. She has bad days and has to stay in bed and has painful nights. The doctor did not tape plaintiff or give her any heat treatments but plaintiff used an electric pad at home for excruciating pain.
Dr. Pranger testified that when he examined plaintiff on July 2, 1951 she had marked pain practically all over her body, particularly the back, shoulders and leg. The movements in her arms, legs, neck and back were limited, with a great deal of muscle spasm, difficulty in getting around, in moving her head from side to side, and in using her arms. She had some degree of swelling of the joints, particularly in her arms and hands. Narcotics were administered to keep her under control and for the relief of pain and nervous reaction. Later a specific treatment, an anti-rheumatoid drug, cortisone, was injected twice a week to alleviate pain and inflammation of the joints. X-rays of plaintiff's back revealed hypertrophic spondylitis of ten years' duration, a complete fusion of the spine ("poker back"), causing limitation of motion and stiffness due to arthritis. The doctor testified that it is possible to have arthritis of a marked degree and yet not have *311 pain until the person is subjected to injury; that it is possible to aggravate such a condition by injury; that an injury can tear loose some of the formation that nature has built up and promote movement; that an arthritic condition such as plaintiff had could be aggravated by the tearing loose of some of the spur formations or by unusual motion or straining which would extend her usual amount of motion; that there was no evidence of any breaking of the spur formations in plaintiff's back; that with the amount of arthritis plaintiff had there would be pain upon lifting, bending or stooping sufficiently to force the spine beyond the point of immobility; that at the time of trial plaintiff could not lift boxes, do bending, stooping or physical work, and it was difficult to say whether she would ever be able to do that. He was inclined to say that she could not do any more work. He said that plaintiff's condition of arthritis was a permanent and painful condition; that plaintiff's "attempt to defend herself" while caught in the bus door was "enough force to aggravate this arthritic condition" and that if plaintiff was forced to acutely "flex her body" or bend suddenly it would bring on the condition.
The assignments of error involve the propriety of the argument of plaintiff's counsel, the effect of a voluntary statement made by plaintiff, and the size of the verdict.
For its first point defendant asserts that prejudicial error was committed by the court in overruling its objections, motion for a mistrial, and motions to disregard the argument of plaintiff's counsel to the effect that defendant had failed to produce any witnesses to the accident. (On the issue of negligence plaintiff testified personally as to the facts and called the bus driver and one passenger to testify in her behalf thereon. At the close of plaintiff's case defendant introduced only one witness, Dr. Murphy, who testified solely to medical matters).
The record with respect to the final argument follows:
Mr. Trumbull (counsel for plaintiff):
"Now I am sure that he will tell you when he talks to you that her condition today be it painful, be it disabling, whatever it may be that it isn't the fault of this accident. I am sure that that is what his position will be. That is his only position in view of the fact he has brought in no other witnesses but the doctor.
"Mr. Gerhard: Just a minute. I want to object to that. I am under no obligation to produce any witnesses according to law, and I am going to move that that be stricken, that statement by Mr. Trumbull be stricken.
"Mr. Trumbull: I am merely stating the facts, Your Honor. He has produced no other witnesses.
"Mr. Gerhard: I am under no obligation to produce any.
"The Court: All right, you may answer, Mr. Gerhard.

* * * * * *
"Mr. Trumbull: There is an old axiom that one of my professors told me about: when you have no defense attack everybody in sight. * * * That certainly comes close to this situation, when you have no defense attack everybody in sight. They have the same opportunity to put on witnesses in this case as we did.
"Mr. Gerhard: Judge, I am going to object to that as an improper comment on the way the trial proceeded. I stated that we had no witnesses to the accident.
"Mr. Trumbull: Your Honor, that is my point.
"Mr. Gerhard: Now he is saying that I had opportunity to do it. I don't know where I would get them.
"Mr. Trumbull: He thinks merely by saying I have no witnesses that he can keep me from commenting on the fact. I have a perfect right to comment on his testimony or lack of it, Your Honor.
"Mr. Gerhard: Judge, I am going to move that Mr. Trumbull's comment be stricken from the record and the jury instructed to disregard it. I will further move for a mistrial at this *312 time because the argument is highly improper as to the lack of witnesses.
"Mr. Trumbull: If I am wrong, I am sorry, Your Honor.
"The Court: I will overrule the motion for a mistrial."
Defendant cites Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W. 2d 506, Id., Mo.App., 205 S.W.2d 866, and O'Donnell v. St. Louis Public Service Co., Mo.App., 246 S.W.2d 539 in support of its contention that it was prejudicial error to permit plaintiff's counsel to comment unfavorably upon defendant's failure to produce witnesses; that by the provisions of the Code of Civil Procedure the names of witnesses may be obtained and they are equally available to both parties.
The courts are liberal in allowing counsel latitude in their deductions from the evidence. City of Kennett v. Katz Const. Co., 273 Mo. 279, 202 S.W. 558. Thus where a defendant stood on a demurrer at the close of plaintiff's evidence and put on no evidence it was held permissible for plaintiff's counsel, in commenting on the failure of defendant to introduce any evidence, to say that if defendant had any defense it would have been produced and that the reason defendant failed to produce any evidence was that it would have been against defendant. Smith v. Kansas City Rys. Co., 208 Mo. App. 139, 232 S.W. 261. In the case at bar the argument of counsel for plaintiff did not go that far. The gist of Mr. Trumbull's argument was that although defendant had an opportunity to put on witnesses to testify to the facts of the case, defendant had produced no witnesses but the doctor. The reasonable inference to be drawn from this argument was that defendant had no evidentiary support for any defense on the issue of liability, i. e. on the facts, and that defendant's sole defense was a medical defense. We see no impropriety in the argument under the facts of this case. Where a defendant has no witness to the facts it is a legitimate inference that he has no defense thereon, in the absence of explanatory circumstances. And where defendant produces nothing but medical testimony it properly may be inferred that his defense is purely medical. These are permissible, not necessary, inferences and if they should not be drawn counsel for defendant has an opportunity to point out in his argument to the jury the reason they do not follow. Defendant's counsel in the case at bar, however, was in no position to argue against the drawing of such inferences. On voir dire examination he told the panel that he intended to offer one witness, Dr. Murphy. In his final argument counsel stated that "the case turns for the most part on the medical standpoint, that in my opinion is the salient feature of the case." While it did not affirmatively admit liability defendant did not actively contest the question of liability. In final argument the only mention of the question of negligence by defendant's counsel was a passing reference to the instruction that it does not devolve upon defendant to disprove the charge of negligence but rather the law casts the burden of proof upon plaintiff with respect to such charge. The remainder of defendant's argument dealt with the question of injuries and damages. While negligence vel non was technically an issue there was no practical dispute about it, considering the record as a whole, and we find no error in the argument of plaintiff's counsel.
The Belding and O'Donnell cases, supra, deal with a wholly different situation and are not controlling here. In those cases counsel in effect accused defendant of withholding and failing to produce identified and existing witnesses known to and under the control of defendant (and inferentially unknown to, and not under the control of, plaintiff). Such an argument is reversible error for the reason that the inference of unavailability to plaintiff to be drawn from that argument is invalid because of the discovery provisions of the Code of Civil Procedure. No such accusation or inference is present or inherent in the instant situation.
Next, appellant urges that prejudicial error was committed in refusing to strike a certain voluntary statement of plaintiff while testifying as a witness, and *313 that the error was aggravated by a remark of counsel in the presence of the jury. The record follows:
"Q. In other words the accident happened in July and you worked from what did you say, about the 17th? A. Untiluntil, well Saturday before Labor Day I was unable to get out of bed, I was unable to go down, I couldn't go and I had to call in and say I was unable to come to work. Then over that Sunday and Labor Day I realized I wouldn't be able to hold up any longer, I was fighting against such odds."
Defendant objected and moved the court to instruct the jury to disregard the self-serving portion of the answer. In the colloquy which followed plaintiff's counsel stated: "Another important element in this lawsuit, Your Honor, and it will be shown, is how important this job is to Mrs. Johnson, not only financially but her mental attitude and what has happened to her after she has had to leave it, and I think her testimony is completely relevant." The court made no ruling on defendant's objection or motion, and defendant made no objection to counsel's statement. Appellant contends that the comments of party and counsel were improper and prejudicial references to the poverty and forlorn condition of plaintiff. The objection urged at the trial was different from the objection raised on appeal. Therefore we consider only the former. At the trial it was objected that a portion of the answer was "self-serving." A self-serving declaration is a statement made by a party in his own interest at some place and time out of court and does not include testimony which he gives as a witness in the course of the trial. 31 C.J.S., Evidence, § 216, p. 952. It is therefore obvious that the statement was not a self-serving statement within the meaning of the law, and that the ground given at the trial was without merit.
Finally, appellant contends that the verdict of $7,000 is grossly excessive, chiefly on the ground that there is no substantial evidence of aggravation of pre-existing arthritis, and that the opinion of the doctor that aggravation of the arthritis was possible as a result of the accident is insufficient to remove the question from the realm of speculation, under the cases of Kimmie v. Terminal R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, loc. cit. 565, and Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312, loc. cit. 316. These cases are not analogous. In neither of them did the condition complained of develop immediately after the occurrence of the accident, as in the case at bar. In the Kimmie case, supra, the cancer was not definitely shown until more than a year after the injury. In the Hunt case, supra, the arthritis did not appear suddenly. Plaintiff's claim was based upon a gradual development of arthritis after a period of nineteen years of exposure to cold and wet weather conditions. In the case at bar the symptoms and conditions of which plaintiff complained appeared instantly upon the occurrence of the fall. Furthermore, the opinion of Dr. Pranger was not the only evidence on the issue of cause and effect. There are other facts in evidence which tend to show that the fall caused the aggravation of the pre-existing condition. Where the plaintiff not only introduces expert medical evidence that a certain physical condition is the possible result of a certain casualty but also produces other evidence tending to show with reasonable certainty that the accident caused the condition, the plaintiff has made a submissible case on the issue of cause and effect. Quadlander v. Kansas City Public Service Co., 240 Mo. App. 1134, 224 S.W.2d 396, keynote 6, loc. cit. 403. Plaintiff had recovered without any after effects from a pre-existing condition of arthritis. Before the accident her health was good. She was not under the care of a physician. She was able to walk and work and led a perfectly normal life. She was able to perform the duties of her employment, and lost no time from work because of ill health. The accident produced immediate marked pain, shock and nervousness which put her to bed and incapacitated her for two weeks. Although constantly suffering from pain and disability plaintiff tried to resume her employment. *314 For two months she did part time work at City Hospital but finally was forced to quit her employment because of physical inability, and thereupon became a dependent, handicapped and inactive cripple. The fact alone that plaintiff was in good health for several years prior to the accident and was able to engage in a type of employment requiring considerable physical activity, but was practically an invalid after the injury, is evidence that the accident was the cause of her condition. Pettyjohn v. Interstate Heating & Plumbing Co., Mo.Sup., 161 S.W.2d 248, loc. cit. 252 (aggravation of a pre-existing arthritic condition); Quadlander v. Kansas City Public Service Co., supra; Perringer v. Lynn Food Co., Mo.App., 148 S. W.2d 601, loc. cit. 611; Rieger v. Mutual Life Ins. Co. of New York, 234 Mo.App. 93, 110 S.W.2d 878, and cases cited.
We have carefully examined the authorities cited by defendant[1] in support of its statement that the verdict is grossly excessive. None of them is sufficiently similar on the facts to control the decision in the instant case. Each case must be decided upon its own facts. Before interfering with this verdict it must appear that it is shockingly excessive and so large as to offend against all sense of right. Marshall v. St. Louis Union Trust Co., Mo.App., 196 S.W.2d 435; Jones v. Terminal R. R. Ass'n of St. Louis, Mo.App., 246 S.W.2d 356. The evidence taken in the light most favorable to plaintiff reveals the case of an active self-supporting woman with considerable earning power receiving a painful and shocking injury as a result of which she is reduced to the status of an inactive cripple, no longer able to work, and obliged to quit her employment. At the time of trial she had lost approximately $1,750 in wages and she was confined to her room with little hope of recovery. We do not think that the verdict transcends all reason or is large enough to offend against all sense of right. On the contrary it appears to be within the bounds of reasonable uniformity of awards for similar injuries, having in mind such cases as Baker v. Kansas City Terminal Ry. Co., Mo.Sup., 250 S.W.2d 999; Rosenberg v. Terminal R. Ass'n of St. Louis, Mo.Sup., 159 S.W.2d 633; Belding v. St. Louis Public Service Co., supra; Marshall v. St. Louis Union Trust Co., supra; State ex rel. McCrory v. Bland, 355 Mo. 706, 197 S.W. 2d 669, 168 A.L.R. 929; Green v. Kansas City, Mo.App., 107 S.W.2d 104, and Arno v. St. Louis Public Service Co., 356 Mo. 584, 202 S.W.2d 787.
The judgment of the circuit court should be affirmed and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the Court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.
NOTES
[1] Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743; Kulengowski v. Withington, Mo.App., 222 S.W.2d 579; Boulos v. Kansas City Public Service Co., 359 Mo. 763, 223 S.W.2d 446; Roberts v. Carter, Mo.App., 234 S.W.2d 324; Cacioppo v. Kansas City Public Service Co., Mo.App., 234 S.W.2d 799; Sharon v. Kansas City Public Service Co., Mo.App., 208 S.W.2d 471