overruled in State ex inf. McKittrick v. Wymore, 343 Mo. 98, 119 S.W.2d 941, loc. cit. 948(16), 119 A.L.R. 710, with concurring opinion by Leedy, J. Other cases on this subject are State ex inf. McKittrick v. Wymore, 345 Mo. 169, 132 S.W.2d 979; State on inf. of McKittrick v. Graves, 346 Mo. 990, 144 S.W.2d 91; State on inf. of McKittrick v. Williams, 346 Mo. 1003, 144 S.W.2d 98.

The Constitution of 1875, Art. XIV, § 7, provided for the removal of county officers for malfeasance in office. The 1945 Constitution, Art. VII, § 4, contains a similar provision. Section 531.010, RSMo 1949, V.A.M.S., and Art. V, § 4, of the 1945 Constitution authorize a prosecuting attorney to institute quo warranto proceedings. The cases above-cited, except the Dearing case, hold that county officers may be removed by such a proceeding.

Appellant also says he was entitled to a jury trial. This court en banc, with all of the judges concurring, in the case of State on inf. of McKittrick v. Williams, supra, 144 S.W.2d loc. cit. 105(28–30), ruled that in a proceeding of this nature, the person informed against is not entitled to a jury trial. We need not review the question further.

Appellant contends that a conviction for a criminal offense is a prerequisite to the institution of ouster proceedings. The Dearing case, supra, was cited as authority. That case, as above-noted, has been overruled. The cases of State ex inf. McKittrick v. Wymore, 343 Mo. 98, 119 S.W.2d 941, State on inf. of McKittrick v. Williams, and State on inf. of McKittrick v. Graves, supra, ruled that a conviction was not a prerequisite to the institution of quo warranto proceedings.

We have disposed of all the points briefed by the appellant. The judgment of ouster was proper and amply supported by the evidence.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the Court.

All concur.

**BROWN v. PAYNE.**

No. 43401.

Supreme Court of Missouri.
Division No. 2.

Jan. 11, 1954.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 8, 1954.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Pickett & Andereck, Trenton, for appellant.

Kelso Journey, Clinton, Herbert S. Brown, Trenton, for respondent.

BARRETT, Commissioner.

In this action against Fred S. Payne for actual and punitive damages a jury awarded Mrs. Opal Brown $10,000 actual damages as compensation for her personal injuries.

The circumstances giving rise to the action were that between six and six-thirty o'clock on June 1, 1951, Mrs. Brown, with her husband as a passenger, was driving a pickup truck east on blacktop Highway .35 about one mile from Clinton. Mrs. Brown intended to turn left off of the highway onto an intersecting gravel road. It was a clear day, the sun was shining and, while the road was heavily traveled, visibility from the west was clear for a quarter of a mile. About 600 feet west of the intersection, Mr. Brown said a quarter of a mile, Mrs. Brown, traveling in the right-hand lane of the highway at a speed of about 25 miles an hour, signaled her intention to turn left onto the gravel road. The appellant, Payne, operating his pickup truck in the same direction at a speed of 45 to 50 miles an hour, according to him, saw Mrs. Brown's signal. Mrs. Brown was watching Payne's truck in her rear vision mirror and when she was about 125 feet from the intersection saw that his truck was traveling at a speed of approximately 60 miles an hour and weaving across the highway and she withdrew her arm and the left turn signal, pulled to the right with the right truck wheels on the 3 to 4 foot shoulder, and began to slow down before reaching the intersection. As she did so the front of Payne's truck struck the left rear end of the truck Mrs. Brown was driving and knocked it down the road past the intersection. The skid marks from Payne's truck measured 75 feet.

Owen May was riding with Payne. They had left Trenton the day before and stayed in Kansas City that night. Payne was going to Arkansas and took May along on the trip "trying to get him sobered up." Payne says that they had had a few beers in Kansas City the night before, a beer in Higginsville the morning of June 1st and two beers in Clinton in the midafternoon but that neither of them were drunk. A Clinton businessman, a deputy sheriff, a highway patrolman and the Browns said that both Payne and May were drunk and that May "had passed out" in the truck. Payne engaged in an argument with the deputy sheriff, both Payne and May were arrested by the officers and spent the night in the Henry County jail and the following day Payne pled guilty to resisting an officer, and careless and reckless driving "while intoxicated" and paid a fine of $125.

Mrs. Brown was employed as the production manager in the Bush Hatcheries in Clinton and the truck she was driving, on her way home, belonged to the Bush Hatcheries. Payne's principal defense to the action was that Mrs. Brown was not injured and in support of his claim

offered to prove, and did prove, upon the cross-examination of Mr. Bush and Mrs. Brown that the Bush Hatchery carried workmen's compensation insurance but that Mrs. Brown, as an employee, had not filed a claim for compensation. The trial court, although doubtful as to the admissibility of the evidence, permitted its introduction and upon the court's own motion instructed the jury "that the fact, if it be a fact plaintiff made no claim for Workmen's Compensation is no defense to this suit but evidence thereof was admitted only to shed light, if it does, on the case as a whole." Payne, upon this appeal, urges that the evidence was probative of the fact that Mrs. Brown was not injured, that the jury should have been permitted to draw the reasonable inference that she was not injured from the fact of failure to make a claim for compensation and that the court's instruction was an unwarranted comment on the evidence and, in effect, improperly withdrew this admissible evidence from the jury's consideration. It is not necessary to say whether the evidence was admissible for any purpose, Reiling v. Russell, 345 Mo. 517, 522–523, 134 S.W.2d 33, 36, it was collateral and did not constitute an admission that she was not injured in the collision, Hilton v. Thompson, 360 Mo. 177, 191–192, 227 S.W.2d 675, 681–682, and, we might add, does not constitute a defense to this action. V.A.M.S. § 287.150; Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913. The instruction given by the court is cautionary and does not direct the jury that the evidence could not be considered upon the question of whether Mrs. Brown was injured. If the evidence was admissible for the purpose of showing no injury, the appellant offered and the trial court gave two instructions, one of which plainly told the jury that "before plaintiff may recover any sum of money from defendant, you must find that she has suffered injuries or damages as mentioned in other instructions of this court." So the jury was not precluded from considering the evidence and drawing inferences from it, and in these circumstances the instruction was not prejudicially erroneous.

From Payne's testimony the jury could have found Mrs. Brown guilty of contributory negligence in several particulars, among others that she stopped the truck immediately in front of him in the right traffic lane and not as close to the right-hand side of the highway as practicable. He insists that there was evidence to support another theory, that she did not stop as he claimed, but was moving as she testified, and that in so doing "she operated her vehicle without keeping same as close to the right-hand side of the highway as practicable." The defendant contends that the court prejudicially erred in refusing his proffered instruction E hypothesizing this theory. The parties in presenting their contrasting arguments point to the applicable "rules of the road", particularly V.A. M.S., § 304.020(2)(10), and the court's interpretation of the rules and debate whether the instruction is applicable to the facts. It is assumed that there was an evidentiary basis for the instruction, but it does not follow, upon this record that the court prejudicially erred in refusing it. The court gave five instructions upon the subject of Mrs. Brown's contributory negligence. As indicated, there was one which hypothesized her stopping in the path of Payne's truck "without placing the right-hand side of her vehicle as near to the right-hand side of the highway as practicable." Another instruction submitted her failure to maintain a proper lookout and failure to keep the truck under reasonable and proper control. Still another hypothesized her signaling to turn left and then failing to do so and stopping in the path of Payne's truck. Another instruction submitted her "failing to operate her vehicle as close as practicable to the center line of the highway along which she was proceeding before turning." Then there was an instruction which submitted Mrs. Brown's contributory negligence in general, "and if you further find and believe from the evidence and from other instructions given you by this court that the plaintiff's own negligence contributed to her injuries, if any, then your verdict must be for the defendant and against the plaintiff." All in all the jury must have understood

that they could find Mrs. Brown guilty of contributory negligence if they found that she either stopped or drove the truck and failed to keep it "as close to the right-hand side of the highway as practicable". V.A. M.S. § 304.020. Refused instruction E did not hypothesize the facts and circumstances relied upon as constituting a violation of this rule of the road but abstractly submitted "in operating her vehicle without keeping same as close to the right-hand side of the highway as practicable." The general instruction was broader than and embraced the matters hypothesized in the refused instruction, Young v. City of Farmington, Mo.Sup., 196 S.W.2d 124, and, in view of all the instructions on the subject of contributory negligence, it may not be said that the refusal of instruction E constituted prejudicial error. Edwards v. Woods, 342 Mo. 1097, 119 S.W.2d 359, 361.

■ As indicated, in addition to Payne's primary negligence in operating his truck, Mrs. Brown alleged that the acts set forth in her petition "were done maliciously and wantonly" and for that reason she asked for $25,000 punitive damages. It is now insisted that the court erred in submitting the case to the jury upon two inconsistent theories, (a) primary negligence and (b) wilful and wanton misconduct, particularly after the defendant made a jury question of Mrs. Brown's contributory negligence, which would not constitute a defense to wilful and wanton misconduct. In this connection it is urged that the court erred in refusing to dismiss the plaintiff's petition upon the ground that it failed to state a cause of action, that the court erred in instructing the jury upon the subject of recovery of punitive damages for wilful misconduct, and in denying his motions for a directed verdict upon that issue. It may be noted in passing that while the statute, V.A.M.S. § 509.200, requires that a claim for punitive damages be separately stated, there is no requirement that a claim for such damages be stated in a separate count. Baker v. Atkins, Mo.App., 258 S.W.2d 16, 23. The appellant, perhaps for obvious reasons, does not contend that there was no evidentiary basis for the submission of

wanton misconduct and punitive damages in this case. State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S.W.2d 46. In any event, it is not necessary to consider whether the court in fact submitted the case on two inconsistent theories, primary negligence and compensatory damages and wilful, wanton misconduct and punitive damages. Upon this subject, however, see and compare: Raming v. Metropolitan St. Ry. Co., 157 Mo. 477, 57 S.W. 268; Reel v. Consolidated Inv. Co., Mo.Sup., 236 S.W. 43; Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546; Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570.

■ The evidence warranted the submission of wilful, wanton misconduct and therefore of punitive damages. But the jury were told that if they found both actual and punitive damages "you will state the amount and kind of damages so found by you separately in your verdict." The jury, however, ignored the instructions on the subject of wilful misconduct and punitive damages and by their verdict specifically awarded Mrs. Brown "actual damages in the sum of $10,000." In these circumstances the appellant would be in no position to complain of error in the instructions upon the subject of wilful misconduct and punitive damages because the jury, obviously, ignored them. Aldridge v. Zorn, Mo. App., 287 S.W. 650, 657; Rodgers v. Schroeder, 220 Mo.App. 575, 581, 287 S.W. 861, 864. The sole basis or claim of prejudice here is the mere inconsistency of the two theories. But, as with the instructions, it is difficult to perceive how he was prejudicially injured by the submission of this question, or that he should be permitted to complain of it, the jury having specifically resolved all these issues in his favor. Agee v. Herring, 221 Mo.App. 1022, 1026, 298 S.W. 250, 252; Bowers v. Etherton, Mo. Sup., 216 S.W.2d 83.

■■ In this connection, upon the allowance of punitive damages and Payne's wealth, the plaintiff offered and the court admitted in evidence Mr. and Mrs. Payne's joint federal income tax return for the year 1951, showing a gross income of $17,-

609, and an attached schedule of Payne's partnership return with his brother. It is urged by the appellant that "evidence of the financial status of either party in an action based on primary negligence is material error." Of this general rule there can be no doubt, Wiener v. Mutual Life Ins. Co., 352 Mo. 673, 179 S.W.2d 39 and, despite some anomaly in the reasoning, when exemplary damages are recoverable against two persons proof of the financial condition of one of them may constitute prejudicial error. Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43; Stansberry v. McDowell, Mo. App., 186 S.W. 757; Schafer v. Ostmann, 148 Mo.App. 644, 129 S.W. 63. But, when the action is against but one person, as here, and there is evidence warranting the submission of punitive damages the general wealth of the defendant is admissible and may be considered in assessing punitive damages. Sperry v. Hurd, 267 Mo. 628, 185 S.W. 170; Buckley v. Knapp, 48 Mo. 152; McAnarney v. Commonwealth Loan Co., Mo.App., 208 S.W.2d 480; McMillen v. Elder, 160 Mo.App. 399, 140 S.W. 917. It is not necessary to consider the particular type of evidence admissible upon this question, it is sufficient to assume that this particular piece of evidence was improperly admitted in its entirety in this action, Traw v. Heydt, Mo.App., 216 S.W. 1009, but it does not follow that its admission constitutes such prejudicial error as to require the granting of a new trial. In this case there was an instruction on wilful misconduct and the allowance of punitive damages but there was no instruction permitting the jury to consider the defendant's wealth "in assessing plaintiff's damages, if any," as there was in the Traw case. In this case the evidence complained of was offered and admitted upon the allowance of punitive damages only and the jury, by their verdict have plainly ignored the evidence and the appellant may not now complain of its admission as prejudicial error. 5 C.J.S., Appeal and Error, § 1736(e), p. 1028; Ferguson v. Evening Chronicle Pub. Co., 72 Mo.App. 462, 467–468; Baker v. Atkins, supra; Schmuelback v. Shaw, 159 Okl. 79, 14 P.2d 226; Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413, 101 A.L.R. 1190.

As a part of her medical evidence the plaintiff offered the deposition of Dr. Stitt, a chiropractor, who examined and gave Mrs. Brown treatments during the period of January 12 to February 18, 1952. The doctor found that Mrs. Brown had a stiff neck, he palpated the sixth and seventh cervical vertebrae and found the nerve running to her left arm painful. He took X-rays and they showed "various subluxations of the spine, mainly of the sixth cervical vertebrae," and it was his opinion that the condition was permanent. After describing his examination and treatment, manipulation of the vertebrae and muscles toward their normal position, a hypothetical question was put to him from which he gave as his opinion and conclusion that the accident in question was the cause of Mrs. Brown's condition, as he found it. It is urged that the trial court erred in permitting the question for the reason that pertinent facts were omitted, particularly certain facts upon which the appellant relies as demonstrating that Mrs. Brown was not injured in the collision. In the first place, considering the evidence most favorable to the plaintiff, it is doubtful that she was bound in any event, to include these matters in her question. Kirk v. Kansas City Ter. Ry. Co., Mo.App., 27 S.W.2d 739. But, in the second place, assuming that they should have been included in the question upon proper objection, the insuperable difficulty with the appellant's position now is that his counsel did not follow the usual procedure, did not suggest or supply any omitted facts upon request or make the specific objections he now urges, and the propriety of the question is not subject to review. Morton v. St. Louis-San Francisco R. Co., 323 Mo. 929, 952, 20 S.W.2d 34; Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111; Coy v. Dean, 222 Mo.App. 67, 4 S.W.2d 835, 839.

The essentially meritorious question upon this appeal is whether the verdict of $10,000 is excessive. When the trucks collided Mrs. Brown was thrown against the steering wheel and her head hit the top of the truck cab. Immediately after the collision she left her husband with the truck and

started walking up the road to a filling station to report the accident. She had walked about half the distance when a truck picked her up. She walked all the distance back to the truck and was upon the scene of the accident for some time. After she got home Mrs. Brown found a red place across her breast, apparently from the steering wheel, she had had one breast removed in 1934 for cancer. Her arms were sore and there was a knot on her head, her knees were skinned, both arms were blue and she was sore. She was exhausted and laid down on the bed and cried. She prepared supper and that night drove the truck back to her place of employment to supervise some work. She returned home after an hour or so and that night was nervous and could not sleep and her neck and head pained her and she was sore all over. She worked at the hatchery on the following day and did not consult a doctor until the "next day after that." At the time of the trial she described her disabilities and injuries as "spells" of pain when she moves her head and arms, "It is continuous, I never know when it will strike me. * * * sometimes twice a day." She suffers from a lack of appetite, is nervous and irritable and no longer cares for company and friends. She says that she does not walk freely, "I walk with a limp, my head more or less to the right * :* *. I couldn't turn it to the left at all." She experiences pain "down my back and comes under part of my shoulder down my arm and in these two fingers," and there is no feeling in the fingers. She has a fear of cancer in her remaining breast. Prior to the accident Mrs. Brown did a man's work at the hatchery, lifted crates of eggs and chickens and helped load and unload trucks and moved brooders, all of which she is unable to do at this time.

On the second or third day after the accident Mrs. Brown went to Dr. Smith in Clinton. He saw her one time and "said it was due to a nervous shock and condition." Dr. Smith prescribed two kinds of pills, one for pain. Then she went to Dr. Powell, an osteopath, four to eight weeks. He took X-rays and gave her treatments, including two hormone shots. "He said it was a nervous condition and he couldn't do me very much good." These physicians were not called as witnesses. She was also examined at a later date by two doctors in Kansas City who were not called as witnesses. Aside from the deposition of the chiropractor who saw and treated Mrs. Brown in January and February 1952 her medical witnesses were Dr. Korth of Kansas City who saw and examined her on August 6 and 31, 1951 (the collision was on, June 28, 1951) and again on May 3, 1952, and Dr. Duffy of Trenton who examined her the week preceding the trial in May 1952.

Dr. Korth, upon his first examination of Mrs. Brown, who is forty-one years old, found tenderness and muscle spasm in her neck at the seventh cervical area, and there was a diminution of sensation in the area. There is a diminution in the size of her left arm of approximately two inches, and there is sixty per cent limitation of movement in her left arm. Her left shoulder is smaller than her right shoulder. There was some diminution of gripping power in her left hand and she was nervous and apprehensive. From that first examination Dr. Korth decided that "she was suffering from severe injuries, the first was a severe strain and disability in the lower portion of the neck, with damage to the nerves emanating from that area and originating at the seventh cervical vertebrae. *It is my idea that it could have been a protrusion of an intervertebral disc or at least some injury to that particular nerve or a protrusion.*" He found her condition the same upon the second examination and suggested that she see two other doctors, one a neuro-surgeon. At that time a Thomas collar was applied to her neck and she has worn it intermittently. Her condition was the same upon the third examination and at that time, "*I thought she had sustained a concussion.*" X-rays confirmed his diagnosis of a pinched nerve between the seventh cervical and first dorsal vertebrae. In answer to the hypothetical question it was Dr. Korth's opinion that Mrs. Brown's condition was due to the collision and that her injuries

were permanent. It was his opinion that no part of Mrs. Brown's condition was due to menopause as the appellant claimed and sought to prove.

Dr. Duffy found "an extremely nervous lady, she was specially worried about her condition, complaining of headache, soreness in chest and neck and weakness in her left arm and pain in her back; * * *." He found a tenderness and tightness in the muscles of her neck and a rigid left shoulder. There was "a slight shrinking of the muscles of that forearm" and weakness in her left shoulder, forearm and hand. He was of the opinion that the symptoms, he found "could probably resulted from injury to her back. * * * It is the ulnar nerve in the left." There was some loss of sensation and it was his opinion that there had been an injury to the nerve between the seventh cervical and first dorsal vertebrae.

Admittedly there is no precise formula for gauging whether a verdict is excessive, each case depends upon its own facts. Consideration is given the nature and extent of the injuries and losses, diminished earning capacity, changing economic factors and the compensation awarded and approved in cases of similar or fairly comparable injuries. The nature, extent and permanency of the injuries are the paramount factors and the ultimate test of excessiveness or of inadequacy of award is what will fairly and reasonably compensate the plaintiff for her injuries. Larson v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 261 S.W.2d 111; Marczuk v. St. Louis Public Serv. Co., 355 Mo. 536, 196 S.W.2d 1000. Mrs. Brown's injuries and losses are not demonstrably comparable to the injuries involved in Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69 and Schaefer v. Transamerican Freight Lines, Mo.

Sup., 173 S.W.2d 20, and, even in those cases a $20,000 verdict was reduced $5,000 and a $15,000 verdict was reduced $3,500. In this case there were no fractures, no injury to the spinal cord and there has been no hospitalization. There has been but little medical treatment, Arno v. St. Louis Public Service Co., 356 Mo. 584, 202 S.W.2d 787, and none indicated for the future. Mrs. Brown has been absent from her employment for short periods of time but she has continued in her former work and there have been no lost wages. Accepting the medical testimony that her injuries are serious and permanent, all the facts and circumstances considered, the award of $10,-000 is nevertheless excessive in the sum of $3,000. Her injuries and losses are fairly comparable to the injuries and awards involved in the following cases, in each of which a remittitur was required: Arno v. St. Louis Public Serv. Co., supra; Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713; Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015; Williams v. Illinois Central R. Co., 360 Mo. 501, 229 S.W.2d 1, 20 A.L.R.2d 322; Harvey v. Gardner, 359 Mo. 730, 223 S.W.2d 428. If, therefore, the plaintiff will enter a remittitur in the sum of $3,000, within fifteen days, the judgment will stand affirmed in the sum of $7,000, as of the date of the judgment, otherwise the judgment will be reversed and the cause remanded for a new trial.

WESTHUES and BOHLING, CC., concur.

PER CURIAM.

The foregoing opinon by BARRETT, C., is adopted as the opinion of the Court.

All concur.