Harlene HIKEN, a Minor, by her Mother
and Natural Guardian, Pauline Hiken
(Plaintiff), Respondent,

v.

WILSON'S SHOES, Inc., a Corporation
(Defendant), Appellant.

No. 29931.

St. Louis Court of Appeals.

Missouri.

Nov. 5, 1958.

Alexander & Robertson, L. A. Robertson, George W. Perry, Marvin E. Boisseau, St. Louis, for appellant.

Morris A. Shenker John E. Bardgett, Sidney M. Glazer, St. Louis, for respondent.

PER CURIAM.

This is an action against Wilson's Shoes, Inc. for damages for personal injuries sustained by Harlene Hiken, a minor. From a judgment for plaintiff for $5,000, rendered by the Circuit Court of St. Louis County upon trial by jury, defendant has appealed.

The petition, after alleging the customer-store relationship between the parties, charged defendant with negligence in causing and directing plaintiff to go into an area which was dark, dim and not adequately lighted so as to enable plaintiff to see and discern a stairway located therein, as a result of which she fell down a flight of steps. Defendant denied the charges generally and pleaded contributory negligence.

The facts, viewed in the light most favorable to the prevailing party: Plaintiff, Harlene Hiken, a 14-year old high school student, accompanied by her sister, Marcia, went to appellant's store in the City of St. Louis to purchase a gym suit. She did not know her size. The saleslady handed her two suits to try on. Not knowing where the dressing room was located, she asked the saleslady where to go for fitting. The saleslady pointed straight toward a curtained doorway and told plaintiff to "Go straight back as far as you can and then make a left." The curtains were visible to plaintiff and partially open. Plaintiff was then standing at a point at the south end of a counter from which, if she kept walking straight north, she would "go right on into the green curtains." Plaintiff and Marcia started north, straight for the curtains, walking alongside the counter, which was to their left. When plaintiff reached the end of the counter she "just glimpsed over" to her left and looked momentarily down a corridor. As she passed the north end of the counter plaintiff took a "couple of steps" to her left because "the counter came out." Plaintiff and her sister then proceeded through the curtained doorway, into a dirty, gloomy, dimly lit stockroom. The electric lights in the storeroom were not turned on. It was not pitch dark in the storeroom but the light was very dim. Plaintiff "couldn't see anything too clear." It was "kind of dark, * * * kind of on the darker side." Upon entering the stockroom and when "just past the curtains" plaintiff looked to both sides, saw what looked like a wall to her left and shelves of shoe boxes to her right. Plaintiff realized that it was a stockroom. One of the girls said "This couldn't be it so we might

as well go straight ahead." Plaintiff could see where she was walking. It looked like there was a black mat or carpet on the floor. After that it looked like wooden flooring, so she thought it was "just a rug or something like that." On the floor in front of her plaintiff saw some light, a reflection "like at a dead end." Thinking of the instructions to keep going straight as far as she could and seeing the reflection on the floor near the dead end straight ahead, which looked like light coming from the left side, plaintiff concluded that she would there find the dressing room. Because of insufficient light plaintiff did not and could not see the open stair well which led to the basement and which dropped out of the floor. Plaintiff walked "a little bit slower than usual because it was so dark we wanted to make sure nothing happened." She headed for the reflection on the floor, stepped into the dark area of the open stair well into space and fell down a flight of ten steps, coming to a stop on a landing below. Defendant's store manager called plaintiff's mother on the telephone and told her that he was "sorry it had happened, but the sales person gave her the wrong directions and she fell down a flight of stairs."

There was no sign designating the curtained doorway as the entrance to a storeroom. There was no "no admittance" sign over that doorway. There were no caution or warning signs inside the stockroom. The door to the dressing room was on the left side of the corridor which extended to plaintiff's left as she reached the end of the counter. At no time did plaintiff see that door. There were no signs or designations indicating the whereabouts of the restroom or dressing room.

■■■ Appellant's first point is that the court erred in not directing a verdict for appellant. First, it is urged that it is "undisputed" that plaintiff went into a portion of the premises not intended for use by customers and where she was not invited; that appellant did not owe plaintiff the duty to exercise ordinary care to warn of a dan-

gerous condition in that portion of the premises; that plaintiff's testimony that she was told to go straight back as far as she could and make a left turn did not constitute an invitation to enter the curtained doorway, because by going back as far as she could she would have missed the curtained doorway and continued north to the extreme rear end of the store where there was no danger; that even under plaintiff's version of the nature of the directions plaintiff did not follow directions, but walked a few steps to the left "in an angling direction," instead of going *straight back;* that the saleslady's act of merely pointing in a northerly direction did not constitute a direction to enter the curtained doorway but could be construed to mean "anywhere towards the north end of the store." These suggestions must be disallowed. Whether plaintiff was invited to the area of the storeroom was a contested question of fact. Plaintiff's evidence was amply sufficient to justify submission to the jury of that question. The words "straight back" are not to be construed according to the inflexibility of a surveyor's transit line. In connection with the saleslady's gesture those words must be taken to reasonably include the slight deviation of two or three steps "in an angling direction." An examination of the photographs showing the counter, curtained doorway and physical surroundings clearly reveals a situation from which any impartial fact finder might reasonably conclude that the saleslady's gesture, pointing directly to the curtained doorway, made simultaneously with the giving of her oral directions, constituted an invitation to enter the curtained doorway. Next, it is urged that plaintiff was guilty of contributory negligence as a matter of law in not following, but departing from, the instructions given her and in trying to "explore the area after she had passed beyond the curtains." This argument is not persuasive. There was ample evidence from which the jury could find that plaintiff did not depart from, but followed, the directions given her; that

under the circumstances plaintiff had a right to assume that the area of the storeroom was reasonably safe for her to pass through without harm and that she exercised reasonable care for her own safety. Nor does the evidence compel the conclusion that plaintiff, during her progress through the storeroom, was "exploring" the area or going beyond and outside of the bounds of her invitation. It was a question for the jury, not for the court.

■ Appellant's second point is that the court erred in giving Instruction 1. First, we are asked to rule that the hypothesis of fact that defendant's clerk "directed plaintiff to go into the area where plaintiff was injured" is not borne out by the evidence. What we have said under the previous point disposes of this contention adversely to appellant. Next, it is urged that the following portion of Instruction 1 is argumentative and an unwarranted comment on the evidence:

"and if you find that such directions consisted of Defendant, through its clerk, telling Plaintiff to go straight as far as you can and then turn left and by Defendant, through its clerk, pointing toward the curtained doorway shown to you in the evidence and that Harlene Hiken, pursuant to said directions went into the area indicated by Defendant's clerk."

Appellant says that the instruction gave undue emphasis to the evidence of the saleslady's gesture and oral direction. In Schnurr v. Perlmutter, Mo.App., 71 S.W. 2d 63, we held that the rule against commenting upon detached portions of the evidence is not violated by an instruction which refers to the facts which the evidence tended to prove and which entitled the party to a favorable verdict upon a finding of such facts by the jury. A party litigant has the right to hypothesize the facts given in evidence which will entitle him to a verdict if the jury finds them to be true, provided

"the facts thus singled out and referred to are not given undue prominence to the exclusion of the other and countervailing evidence in the case, and the jury is not charged as to any special weight to be attributed to them. In other words, even though a particular instruction may direct the attention of the jury to but a single feature of the evidence as the same relates to a distinct issue in the case, still if the instruction does not purport to preclude the jury from a consideration of all the evidence, but simply declares the legal effect of the evidence on which it is based, the rule against commenting upon a detached portion of the evidence is not violated, and reversible error may not be predicated upon the giving of the instruction." Roth v. Roth, Mo.App., 142 S.W.2d 818, loc. cit. 822.

The parties were in direct conflict as to the nature of the directions given by the saleslady. Appellant's witnesses denied plaintiff's testimony that the saleslady pointed to the curtained doorway, and testified that the saleslady made a circular movement with her hand indicating for the two girls to go around the corner of the counter and to the left, down the corridor; denied plaintiff's testimony that plaintiff was instructed to go straight as far as she could, and testified that the direction was to "go around the corner and keep going all the way to the ladies room." Plaintiff had a right to have her theory of the case, which her evidence tended to prove, submitted in the quoted language of Instruction 1. The instruction did not preclude the jury from considering appellant's theory of the facts or otherwise prejudice appellant's rights. By Instruction 11 the jury was instructed that "the Court does not mean to assume as true or established any of the matters mentioned or referred to in

the instructions, but leaves you to determine from the evidence whether or not such matters have been proved by the evidence." This provided appellant with an additional safeguard.

■ Appellant's third point is that plaintiff's counsel was guilty of misconduct and that the court erred in overruling appellant's objections to certain prejudicial remarks and questions of plaintiff's counsel referring to and discussing photographs not found in evidence, and "in failing to rule on certain prejudicial remarks and questions of plaintiff's counsel." The motion for new trial, paragraph 11, relates only to the *overruling of objections to remarks of counsel* and says nothing about misconduct of counsel, prejudicial questions or failure to rule. If appellant desired a review of the action of the court in connection with misconduct of counsel or with reference to the *questions* or *failing to rule* appellant should have preserved such questions for review in its motion for new trial. Having failed to do so these points are not before us. Brock v. Gulf, M. & O. R. Co., Mo.Sup., 270 S.W.2d 827; Nickels v. Witschner, Mo.Sup., 270 S.W.2d 848. Nor does the transcript reveal any "plain error affecting substantial rights" entitling appellant to consideration of these points under Rule 3.27 of the Supreme Court, 42 V.A.M.S.

■ The facts leading up to the only question properly preserved for review under appellant's third point are these: The light conditions in the storeroom figured prominently in the inquiry. Appellant had photographs made showing the interior of the storeroom. Apparently (although this was not in evidence) plaintiff's attorney saw, or thought he saw, one of appellant's photographs on the counsel table, showing the window shades in the storeroom drawn down. If there was such a photograph it was not marked as an exhibit or introduced. Appellant's store manager had testified that the window shades in the storeroom "are usually up"; that "they are

open." During this witness' cross-examination on light conditions plaintiff's counsel asked appellant's counsel:

"Q. Do you have that photograph (you) put back in your brief case? A. These are the ones in evidence.

"Q. I mean the one you had in your hand. A. It is in my brief case.

"Q. Have you got the one there with the shade drawn? A. I will object to any statements counsel made to the jury. It is my brief case—.

"Q. Well, all right.

"The Court: Sustained."

After the court sustained the objection there was no motion to strike or to have the jury instructed to disregard or for other relief. Appellant received all of the relief it requested. Where the action of the court is responsive to an objection made by counsel the court is not to be convicted of error for failure to take other and further curative steps not then sought by the party now complaining. Chiodini v. Terminal R. Ass'n of St. Louis, Mo.App., 287 S.W.2d 357.

■ The last question is whether the $5,000 verdict is excessive. On September 10, 1955 plaintiff, a 14-year old girl, in previous good health, fell down a flight of stairs consisting of ten steps and ended up on the landing at the bottom of the steps. Plaintiff could not stand up, her back hurt all over, she could not walk on her leg, she ached all over, both legs were cut, her chest gave her pain, she felt "real dizzy" and she was dazed. It was hard for her— she had to struggle—to get up. She was helped up the stairs. A friend took her home. When she got into the house she could not talk. She was shaking. She lay down on a couch, felt sore all over, was dirty from head to foot and her blouse was torn. She had bruises and scratches all over. Her right ankle and foot was painful and swollen and she could not walk on it. The family Doctor Flance, called to the

home, found her nervous and distraught, with bruises and lacerations of both knees and foreleg, pain, swelling and tenderness of the dorsum of the right foot, a bruise of the left hip, bruises of both shoulders, pain on motion of right shoulder, pain in upper back radiating into the left chest. He gave her salicylates for pain and advised her to rest. He saw her again two days later at his office at which time there was additional swelling of the dorsum of the right foot with pain and tenderness on pressure over the base of the third and fourth metatarsal bones, together with pain in the chest, legs, left thigh and left shoulder. X-rays of the chest, thoracic spine and right foot showed no evidence of fracture. Plaintiff remained in bed the day of the injury and the next day. Plaintiff suffered from multiple bruises and lacerations and a nervous state due to the fall. As in the case of all bruises she had a small amount of hemorrhage into the muscles. Plaintiff was cared for by her mother, a practical nurse. Plaintiff was in bed at home until some time the following week. She returned to school seven to ten days after the injury, limped for two or three weeks and her ankle pained her for three or four weeks. Her shoulders were sore for about two weeks. The chest pains persisted for two or three months. Her treatment consisted of rest and quiet, aspirin, back rubs, hot baths and heat from a heating pad. After returning to school she did not miss any complete days "but I would have to take off, you know." She was excused from gym after returning to school and sometimes permitted to sit on the side lines. Plaintiff became dizzy when trying to play basket ball and her neck and back hurt. Dr. Flance saw plaintiff again in August, 1956 and on five subsequent occasions. Plaintiff still complained of her back and of nervousness. The nervousness caused her to gain weight. Her only present complaints are backache and nervousness. At Dr. Flance's suggestion plaintiff was X-rayed in February or March, 1957 by Dr. Lenoble, who found no evidence of

bone or joint disease. Dr. Funsch gave plaintiff a complete examination including X-rays, found plaintiff able to stand erect, bend forward and touch the floor with the tips of her fingers and bend to either side without difficulty. Straight leg raising was without restriction. All the movements of her back were within normal range. X-rays of upper and lower spine were normal and no evidence of any injury. The doctor found no objective symptoms which would account for her complaints. The case was tried a year and seven months after the fall. Plaintiff was still suffering from pain in her back whenever she looked up or down or picked up objects and she testified sometimes her back hurts when she is not doing anything. Plaintiff's mother was still giving her back rubs at the time of trial, sometimes two or three times a week, other times every night, sometimes only once a week. Other present complaints are nervousness and irritability.

There is no evidence of permanency, no fracture, no hospitalization, no special damages, no permanent disabling effect, no disfiguration. Plaintiff suffered painful and temporarily disabling, but not serious or permanent, injuries.

In support of the $5,000 judgment plaintiff cites Keely v. Arkansas Motor Freight Lines, Mo.Sup., 278 S.W.2d 765, and Arno v. St. Louis Public Service Co., 356 Mo. 584, 202 S.W.2d 787. In the Keely case there was evidence of permanent injury, a bursitis of the kneecap or patella interfering with plaintiff's duties, which required a great deal of automobile driving. In the instant case there are no permanent injuries. In the Arno case there were quite severe injuries rendering the two cases incomparable.

In Roberts v. Carter, Mo.App., 234 S.W.2d 324; McBride v. Clarida, Mo.App., 254 S.W.2d 36, and Morris v. Alexander, Mo.App., 275 S.W.2d 373, in all of which the plaintiff suffered more serious injury than in the instant case, judgments for $4,000, $5,000 and $4,500, respectively, were

cut to $3,000. Viewing the evidence in the light most favorable to plaintiff and giving due consideration to the amounts allowed to stand in comparable cases, we are forced to conclude that the verdict is excessive by $1,500. Attention is directed to the cases of Karnes v. Ace Cab Co., Mo.App., 287 S.W.2d 378; Fann v. Farmer, Mo.App., 289 S.W.2d 144; Hall v. St. Louis Public Service Co., Mo.Sup., 266 S.W.2d 597; Wormington v. City of Overland, Mo.App., 224 S.W.2d 590; Vogrin v. Forum Cafeterias of America, Inc., Mo.Sup., 308 S.W.2d 617, and Kulengowski v. Withington, Mo. App., 222 S.W.2d 579.

Accordingly, if plaintiff will, within thirty days, remit the sum of $1,500 from the judgment of the jury in her favor, the judgment is reversed and the cause remanded with directions to the trial court to enter judgment in the reduced amount, to wit, $3,500, plus interest on $3,500 at six per cent from April 5, 1957 to the date of entry of the new judgment; otherwise the judgment is reversed and the cause remanded for new trial.