**RENNICKE et al. v. UNITED STATES.**

No. 14868.

United States Court of Appeals Eighth Circuit.

Oct. 29, 1953.

Charles Frierson, G. D. Walker, and Frank Snellgrove, Jr., Jonesboro, Ark., for appellants.

James T. Gooch, U. S. Atty., Gerland P. Patten, Asst. U. S. Atty., Little Rock, Ark., Neil Brooks, Associate Sol., U. S. Department of Agriculture, Washington, D. C., Dan P. Chisholm, Regional Atty., and Sidney D. Williams, Atty., U. S. Department of Agriculture, Little Rock, Ark., for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for $4,309.43 in favor of the United States in an action brought by it to recover a balance alleged to be due upon a Commodity Credit Corporation note for $13,921.78 signed by the defendants (appellants) on November 10, 1949, and due April 30, 1950, with 3% interest. As security for the note, the defendants had executed a commodity chattel mortgage and mortgage supplement covering 3,299 cwt. of rice produced by the defendants and graded, for the purposes of the loan, as Zenith No. 2 Grade, and stored in bins on the defendants' farm.

By the terms of the chattel mortgage and mortgage supplement, the defendants represented and warranted that the rice was of the quality stated in the chattel mortgage. The amount of the loan was based upon a "Federal Rice Inspection Certificate" issued at Jonesboro, Arkansas, November 5, 1949, by Raymond A. Selig, a Federal Rice Inspector of the Department of Agriculture. He certified that he had inspected a "Sample of Rice" identified as having been taken from Rennicke Brothers. He graded the sample as "U.S. Zenith No. 2 Rough rice Medium-A-milling quality." The certificate contained in large print the words: "This Inspection Applies Only To The Sample Described."

The mortgage supplement provided, in substance, that, upon maturity of the note, it should be satisfied by payment or by delivery of the mortgaged commodity; that if the quantity, grade, or quality of the commodity when delivered was different from that on which the loan was computed as shown in the chattel mortgage, or if, through mistake or error, the amount loaned to the producers was different from the amount authorized under the loan program bulletin, the settlement value of the quantity of the commodity delivered should be determined at the applicable settlement rate, according to grade and/or quality, as set forth in the program bulletin applicable to the commodity; that if the commodity delivered was of a grade or quality lower than the lowest grade or quality for which settlement rates were established, the settlement value should be the market price of the commodity, "but in no event more than the settlement value of the lowest grade or quality of such commodity for which settlement

rates are established"; that "If the settlement value of the commodity when delivered exceeds the amount due on the principal of the loan, the amount of such excess shall be paid to the Producer by the Corporation"; and that "If the settlement value of the commodity is less than the amount due on the principal of the loan, the amount of such deficiency plus interest thereon at the rate of 3% per annum from the date of disbursement of the loan shall * * * be paid by the Producer to the Corporation * * *."[1]

The note in suit was not paid at maturity, and the defendants on May 15, 1950, were notified to deliver the stored rice to the Roberts Rice Mill, Inc., an approved warehouse at Weiner, Arkansas. The defendants delivered 3,430 cwt., pursuant to the notice. As the rice was delivered to the mill, samples of each truck load were taken by a licensed sampler, and the samples were delivered to Selig, the Federal Rice Inspector at Jonesboro, Arkansas, for grading. He issued a certificate dated May 30, 1950, stating that he had on that date inspected the "Lot of Rice"; that it was "Sample Grade Zenith Rough Rice, Weevily, Medium-A Milling Quality"; and that the shippers were "Rennick Bros.", Weiner, Arkansas, and the consignee was "Commodity Credit Corp."

"Sample Grade" was lower than the lowest grade or quality for which settlement rates were established and loans were authorized, and was a different grade or quality than that on which the loan was computed. The rice was advertised for sale by the Commodity Credit Corporation and sold at public auction to the highest bidder for $10,-015.60 net. This amount was credited upon the note, leaving a deficiency, which the defendants refused to pay.

The Government brought this action for the deficiency, asserting in its complaint the execution of the note, the amount of the balance due, and its non-payment. The defendants admitted the execution of the note and that the Government was the owner of it, but denied that the defendants were indebted for the unpaid balance on the note. They set up as a counterclaim that in the year 1949 they had produced the rice in suit; that in drying the rice it was damaged by a condition known as stack burn; that they made efforts to sell the rice in its damaged condition and received an offer of $3.89 per cwt.; that in an effort to determine the extent of the damage to their rice, and prior to November 10, 1949, they consulted Selig, the Government Inspector; that they were told by him that their rice was not stack burned, but only stained; that he advised them to obtain a loan from the Commodity Credit Corporation rather than to accept the offer made them for the purchase of the rice; and that, following his advice, they applied for and received the loan in suit. The defendants alleged that the Government, acting through Selig, was negligent in failing to discover originally the stack-burned condition of the rice, and was negligent in grading the rice as Zenith No. 2, in view of its damaged condition; and that as a result of such negligence the defendants suffered a loss of $3,327.10, which they were entitled to have allowed as an offset against any amount found to be due the Government. The Government denied liability upon the counterclaim asserted by the defendants, and asked that it be dismissed.

1. Section 1425 of Title 7 U.S.C.A., provides:

"No producer shall be personally liable for any deficiency arising from the sale of the collateral securing any loan made under authority of this Act unless such loan was obtained through fraudulent representations by the producer. This provision shall not, however, be construed to prevent the Commodity Credit Corporation or the Secretary [of Agriculture] from requiring producers to assume liability for deficiencies in the grade, quality, or quantity of commodities stored on the farm or delivered by them, for failure properly to care for and preserve commodities, or for failure or refusal to deliver commodities in accordance with the requirements of the program."

Upon the trial of the case, the defendants' evidence did not establish their counterclaim, and it is only incidentally involved in this appeal. The court found the issues in favor of the Government, and found that "The rice when delivered was classified as sample grade, and this was the correct classification for the rice"; that "There is no showing by the defendants that the rice as sold was not correctly classified, and there is no showing that the rice was damaged or deteriorated for any cause between November 10, 1949, the time of the loan, and the time of the sale, and no such damage appeared from any evidence in the case"; and that "It is clear that the rice delivered and classified at the Roberts Rice Mill was not Zenith No. 2, on which grade the loan had been made."

The defendants contend that these findings of the District Court are clearly erroneous because they are without adequate evidentiary support, and that the court mistakenly assumed that the burden was on the defendants to prove that the grade of the rice when delivered was not different than that upon which the amount of the loan was computed. We think the defendants are mistaken in that regard and that what the court determined from the evidence was that the rice when delivered was of a different grade than that upon which the amount of the loan had been computed and was correctly graded when delivered, and that there was no evidence which would justify a contrary conclusion.

■■ The defendants also contend that the Certificate of Inspection dated May 30, 1950, covering the delivered rice, was incompetent and should not have been received in evidence. The short answer to this, we think, is that under § 1732 and § 1733(b) of Title 28 U.S.C.A., the certificate, as a record made in the regular course of business, was admissible as evidence of the truth of the statements therein recorded. See and compare Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467, 473. The certificate recites that it was issued in compliance with the regulations of the Secretary of Agriculture governing the inspection of rice and "is receivable in all courts of the United States as prima facie evidence of the truth of the statements therein contained." The District Court was entitled to rely upon the certificate as evidence that the rice when delivered was of a different grade and quality than the grade and quality upon which the loan was based, and, in the light of all the surrounding circumstances shown by the evidence, to conclude that the defendants were liable for the deficiency asserted by the Government. In fact, we think it would be difficult to draw any other inference or to reach any other conclusion in view of the facts that the Commodity Credit Corporation was obviously interested in securing the greatest recovery possible upon the note and had no apparent motive to misgrade the defendants' rice, and that the defendants were in a position to protect themselves against damage from any misgrading of the delivered rice by paying the note and disposing of the rice in any way they saw fit.

■■ The evidence does not, in our opinion, give equal support to two inconsistent inferences and require that judgment go against the Government because it had the burden of proof. On review, the Government, as the prevailing party, is entitled to have the benefit of all reasonable inferences which can be drawn from the evidence viewed in the light most favorable to it. It is elementary that where different inferences reasonably may be drawn from evidence, it is for the trier of the facts to determine which inference shall be drawn.

■ Our conclusion is that the findings of the District Court support its conclusions and judgment, and that the findings are not "clearly erroneous".

The judgment appealed from is affirmed.