220 F.2d 330
 J. Adams BRUCE and Margaret M. Bruce,
v.
Louis C. McCLURE, Trustee in Bankruptcy of Bruce's Juices, Inc., B. J. Products, Inc., and Citrus Meats Corporation.
 No. 15255.
 United States Court of Appeals, Fifth Circuit.
 March 17, 1955.
 
 COPYRIGHT MATERIAL OMITTED John A. Chilldon, Tampa, Fla., for appellant.
 John P. Corcoran, Jr., Charles H. Ross, Tampa, Fla., for appellee.
 Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 This is a suit by the trustee in bankruptcy of Bruce's Juices, Inc., against J. Adams Bruce and his wife, Margaret M. Bruce, complaining that for a period of six years prior to bankruptcy the corporation made monthly payments of $125 to the First Federal Savings and Loan Association of Tampa, Florida, totalling some $11,225, to discharge a mortgage owed by the defendants on their family residence. The suit sought to have the court find that these payments were made without consideration moving to the corporation and were void as against the trustee in bankruptcy, and that the total payments made should be considered as a pro tanto purchase of the mortgage; and that although the mortgage was paid off and satisfied of record, the court should decree a revival of the mortgage and its ownership by the trustee under the principles of subrogation.
 
 
 2
 The trial court, hearing the case without a jury, finding for the plaintiff, decreed that the defendants were indebted to the trustee in the sum of $11,225, together with interest from the date of filing the proceedings, and that the satisfaction of mortgage should be vacated and the trustee be declared the equitable owner of the mortgage with the right to foreclose on the property in default of payment by the defendants.
 
 
 3
 The defendants have appealed from the judgment, asserting that there is no evidence to support the findings of fact and conclusions of law, but that the evidence demanded a finding that the payments were made pursuant to an agreement between the Bruces and the corporation in which they loaned the corporation approximately $10,000 in October, 1946, the proceeds of the mortgage placed on their home, and the corporation agreed to repay the mortgage by the monthly payments of principal and interest to the Savings and Loan Association.
 
 
 4
 Many of the basic facts are undisputed. On October 7, 1946, Mrs. Bruce, who was absent from home in Boston, Massachusetts, signed and sent to her husband, J. Adams Bruce, president of the bankrupt and owner of 1088 of its 2,000 shares, a mortgage on their home which was owned by the entireties, in response to his request, as president of the corporation, to permit him to negotiate a loan from the Savings and Loan Company which he and she would then lend to the corporation; that about that time the mortgage was signed by Bruce and a check was received by him from the lender for the sum of $9,934.95, the net proceeds of the loan; the check was made payable to Bruce and was by him endorsed over to the corporation, which received the full proceeds from the loan; that there were issued to Bruce 500 shares of stock of the company and four notes payable in 30, 60, 90 and 120 days respectively. The stock book was not available at the trial; the notes were entered on the books of the corporation; both stock and notes bear the date of October 7, 1946; that the corporation made the first two monthly repayments of $125 each, called for in the mortgage, on November 7 and December 6, 1946, and charged them on a ledger account to Bruce; that all subsequent payments were made monthly and entered on two ledger cards, one indicating they were payments of the mortgage principal, and the other being posted as interest payments on the mortgage; that on October 7, 1946, there were three directors of the company, Bruce, G. P. Peer, who was also secretary and treasurer, and Miss G. A. Jones; of these only Bruce owned stock in the company; Peer had loaned money to assist the company in its financial problems.
 
 
 5
 We think it convenient to consider the positions of Mr. and Mrs. Bruce separately, because only the former requires any close examination of the evidence. For we find in the record no evidence at all to support the decree appealed from as it affects the land held by the entireties; but to the extent that it is an adjudication that Bruce is personally liable (subjecting the land to foreclosure, only if the entirety is ended so as to give him an interest he can alienate), the evidence supporting it is conflicting and we must consider the trial court's findings of fact as to that matter conclusive unless clearly erroneous. 28 U.S.C.A., Fed.Rules of Civ.Proc. Rule 52(a).
 
 
 6
 First, as to the propriety of the decree as it affects Mrs. Bruce's interest: the evidence is undisputed that Mr. Bruce, a duly authorized agent for the corporation, made an agreement with her that the corporation would pay the mortgage debt in consideration of her execution of the mortgage jointly with her husband, without which he had no power to incumber the property. Whether Mr. Bruce agreed with the corporation to lend the money or to purchase its stock, is immaterial to Mrs. Bruce's express contractual right that the corporation pay off the mortgage. And the corporation's payments on the mortgage debt were not as to her interests made in fraud of creditors, regardless of what private arrangements Mr. Bruce may have made with the corporation. It follows that her interest as tenant by the entireties must be superior to any right of subrogation in the mortgage on the trustee's part.[1] Certainly her contract to give full and adequate consideration to the corporation for its return promise effected no fraud on creditors. If there was any fraud at that time, it was committed against her by Mr. Bruce and the corporation, since both knew that she agreed to mortgage the property and to deliver the proceeds to the corporation as a loan only, and that her cotenant by the entireties owed her "the highest degree of confidence and trust." Andrews v. Andrews, 155 Fla. 654, 21 So.2d 205, 207. In any view of the proof introduced, then, the trustee is not entitled to a revival of the mortgage such as would enable him to foreclose her interest, nor is he entitled to foreclose a mortgage revived as to Mr. Bruce so long as the tenancy by the entireties shall continue.[2]
 
 
 7
 Secondly, as to the propriety of the decree as it may affect Mr. Bruce, we must examine the evidence to determine if the trial court's finding of fact that he agreed to invest the mortgage proceeds as stockholder, is sufficiently supported. The evidence relied upon by the district court to support this finding consists of two particulars: a paper purporting to be part of the corporation's minutes reciting a sale of stock to Bruce for the $10,000 mortgage proceeds;[3] and Bruce's answer to pretrial interrogatories that he had acquired 500 shares of stock on October 7, 1946.
 
 
 8
 The purported minutes were received into evidence over the objection of the defendants, which raised an issue at least as to the sufficiency of the foundation for introducing such evidence. The only evidence as to the authenticity of this paper was the testimony of the trustee that he found the minute book in the company's safe and this paper therein. He stated that he knew nothing else about it, and no other witness testified as to its authenticity. As a corporate record, the paper was quite irregular on its face, since it was undated, the space for the Secretary's signature was blank and the recitation that all Directors waived notice was signed only by one of them. Did the court err, then, in overruling the objection? Under several distinct principles of evidence corporate books may be introduced; (1) If a proper foundation is laid, they are admissible as real evidence of an act of the corporation, being as it were a reification of that act;[4] (2) A proper foundation having been laid, they may be admitted as entries in the regular course of business under 28 U.S.C.A. § 1732; and (3) Inasmuch as they may constitute a prior acknowledgment by a party that a relevant fact was not as he claims it to be at trial, they come within the exception to the hearsay rule relating to admissions.
 
 
 9
 We are of the opinion that no proper foundation was laid for the introduction of the paper in question under either of the first two theories. See Annotation, 65 A.L.R. 329, 330:
 
 
 10
 "The general rule is that before the books of a corporation are admissible in evidence their authenticity must be shown. It must be made to appear that they are the books of the corporation, that they have been kept as its records, and that the entries made therein were made by the proper acting officer for that purpose, or by some other person in his necessary absence."
 
 
 11
 See also Am.Jur., Evidence § 980; 4 Wigmore, Evidence (3d Ed.) § 1074.[5] In Malsby v. Gamble, 61 Fla. 310, 327, 54 So. 766, 772, it was held that where an instrument purporting to be executed by a corporation is offered in evidence without any proof of the genuineness of the corporate seal, and it is neither shown nor admitted that such instrument was signed for the corporation by its proper officers, the instrument is inadmissible. The United States Supreme Court has also recognized this requirement of a foundation for this kind of evidence, in Union Gold Mining Co. v. Rocky Mountain National Bank, 96 U.S. 640, 24 L.Ed. 648, affirming 2 Colo. 565, and holding that no error had been committed below without expressly discussing this point. At the trial, the minutes of two meetings of the board of directors, and one meeting of the stockholders of a corporation, were offered in evidence. The president of the corporation testified that he was present at the meetings and that the record was correct, but the secretary, by whom the minutes were kept, was not called, nor was his absence explained. The Territorial Supreme Court said:
 
 
 12
 "Proof that the book was kept by the corporation as a record of its proceedings was not a sufficient authentication without further evidence to show that the entries were made by the proper officer * * *. Generally, it appears to be necessary to call the clerk or officer who made the entries, if he is living, and, if he is dead, to prove his handwriting."
 
 
 13
 As for admissibility of this paper under the liberal provisions of the business entry statute, 28 U.S.C.A. § 1732, it is necessary at least to submit preliminary evidence that these minutes were made in the regular course of corporate business, before they can be admitted.
 
 
 14
 However, we think that the paper was admissible in this case against Bruce as his admission, and that the trial court did not err in overruling the objection. No objection was made on the ground of the hearsay rule; but even if it had been made, this statement constituted an exception to that rule, being an admission. Admissions inscribed on corporate books are competent evidence against the entrant, and no foundation that the books are authentic is necessary. Harrison v. Remington Paper Co., 8 Cir., 140 F. 385, 3 L.R.A.,N.S., 954, 5 Ann.Cas. 314, certiorari denied 199 U.S. 607, 26 S.Ct. 747, 50 L.Ed. 331; 4 Wigmore, Evidence (3d Ed.) § 1074. The only necessary foundation was a showing that Bruce's signature was genuine; and in his reply to the trustee's request for admissions, he admitted in effect that this was his signature.
 
 
 15
 Nevertheless, the so-called minutes contain such serious irregularities that their probative value as admissions is in our opinion highly questionable. Formerly, the view prevailed that admissions had the function only of impeaching a party by prior inconsistent statements, Greenleaf on Evidence (16th Ed.) § 169, but it is generally accepted today that admissions are affirmative evidence, 4 Wigmore, Evidence (3d Ed.) § 1048, and may in some cases be sufficient alone to establish a cause of action or defense, Richardson, Evidence (7th Ed.) § 351. We have found no Florida cases as to the weight to be given admissions. The propriety of instructions to the jury as to the weight they are to give admissions is the subject of an annotation in 126 A.L.R. 66. The New York Court of Appeals, in Gangi v. Fradus, 227 N.Y. 452, 457, 125 N.E. 677, 679, sets forth persuasively the considerations which ought to justify giving great weight, or none at all, to admissions:
 
 
 16
 "In case they [admissions] were made in ignorance of the facts or in an abnormal state of mind, or were based in part upon mere opinion, or were made casually or thoughtlessly or insincerely * * * they may, in reason, deserve slight consideration or value or none at all. In case they were made understandingly and deliberately, are of pure fact within the knowledge of the declarant, and were made under conditions and circumstances conducive to veracity, and are not over-borne by the other facts in evidence, they may, in reason and sound judgment, establish a cause of action or a defense. Whether they are of the one class or the other, or intermediate, is for the determination of the jury. The effect they shall have upon the issues being tried is for their determination. The trial justice may not instruct as to the rank assignable to them or the influence to be yielded by them. The jury may accept a part as true and put aside a part as not true. In those respects the law has no gauge. The jury shall determine whether or not they were made; if made, the conditions and circumstances under which they were made and the effect thereof, and their probative weight and value, which may range from the lowest, or none at all, to conclusiveness."
 
 
 17
 In the case at bar the admission in question actually contradicts itself on its face. It recites that "we", all of the Directors of Bruce's Juices, have signed the waiver of notice, and yet the waiver of notice bears only one signature. The document tends to impeach its own veracity. Its probative value must therefore be regarded as very slight, especially since the reliability of admissions is recognized in reason and sound judgment to vary greatly with the circumstances in which they were made. And since this slight evidence was contradicted by Bruce's positive testimony and by the circumstance that the notes actually were subsequently paid as if the transaction was indeed a loan and not a sale of stock, we believe the trial court's finding of fact on this record was clearly erroneous, and cannot stand, under Rule 52(a), 28 U.S.C.A., Fed.Rules Civ.Proc.
 
 
 18
 The evidence that Bruce answered a pre-trial request for admissions stating that 500 shares of stock had been issued to him on October 7, 1946, is ambiguous and lends no substantial support to the court's finding, it being inconsistent with the other evidence relied upon by the trustee, since not until two days later was the mortgage executed and the money raised.
 
 
 19
 We view this question as solely one of interpretation of the contract. Since there was no integrated contract (see Restatement, Contracts § 228) the trier of fact must weigh all of the evidence indicating what the manifested intentions of the parties actually were, giving due consideration to the canon of construction that "if the conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation." Restatement, Contracts § 235, Clause (e). The conduct of the parties here, the payments being made by the corporation soon after the transaction occurred and continuing long thereafter, indicate that the parties then contemplated a loan, and we do not think that interpretation of the transaction does violence to the manifestations of intention of which there is evidence, taking those manifestations as a whole.
 
 
 20
 But even if it should be decided that the parties actually contracted for a sale of stock originally, we think it would be clearly erroneous to infer from that proposition, given the facts which are undisputed, the conclusion that the corporation's payments were without consideration. Restatement, Contracts § 235, Comment h:
 
 
 21
 "Comment on Clause (e) * * * Under the rule stated in this Clause the meaning of the contract cannot be stretched by the acts of the parties beyond what the language will bear. Such conduct of the parties, however, may be evidence of a subsequent modification of their contract."
 
 
 22
 Assuming the original agreement was for a sale of stock, we nevertheless think that the evidence here that the corporation did subsequently make the mortgage payments with full knowledge and acquiescence of all the Directors, overcomes as a matter of law the presumption of the continuity of the original contract, establishing (there being no contrary evidence) that there was a subsequent modification, even though it may never have been manifested in express writings or declarations. In Florida, even an integrated contract may be modified subsequently by parol. Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263; 7 Wigmore, Evidence (3d Ed.) § 2441. And at the time this hypothetical parol modification would have to have been made, there is no evidence that the corporation's state of solvency was such that a fraud on creditors would have been effectuated thereby.
 
 
 23
 We are of the opinion, therefore, that the trial court was clearly wrong in finding on this record that the payments by the corporation were without consideration, and that the case must be reversed and remanded for a new trial, since further evidence might establish that fact and result in liability in personam with respect to Bruce, and might develop other facts as to Mrs. Bruce's transaction with the corporation.
 
 
 24
 Judgment Reversed.
 
 
 
 Notes:
 
 
 [1]
 See Restatement, Restitution § 162:
 "Subrogation.
 "Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lienholder."
 Stowers v. Wheat, 5 Cir., 78 F.2d 25, 30:
 "It [subrogation] is applicable only in cases where the party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience that other ought to pay."
 
 
 [2]
 Judge Sibley well summarized the leading Florida Supreme Court cases as to the principal incidents of estates by the entireties, in Sheldon v. Waters, 5 Cir., 168 F.2d 483, 484-485, as follows:
 "Estates by the entirety in property conveyed to husband and wife are recognized in Florida as at common law, English v. English, 66 Fla. 427, 63 So. 822. So long as they exist, property so held is not subject to disposal by either alone, nor is the property subject to the debts of either, for neither is recognized as having any separate right. Newman v. Equitable Life Assur. Soc., 119 Fla. 641, 160 So. 745; Anderson v. Trueman, 100 Fla. 727, 130 So. 12. Such estates may exist in personalty, and the proceeds of sale of realty which was so held are ordinarily held in the same way. Dodson v. National Title Ins. Co., [159 Fla. 371] 31 So.2d 402. Divorce or death will end such a tenancy, and so may both parties by an agreement to do so. If they plainly agree on a division of the proceeds of a sale, their agreement will be effectuated and the agreed part of each will be his or her separate property. Dodson v. National Title Ins. Co., supra. But without an agreement neither alone can do anything to alter the tenancy of indentifiable property so held. Logan Moore Lumber Co. v. Legato, 100 Fla. 1451, 131 So. 381; though the husband may accept payment in discharge of a note held by the entirety, the payment taking its place. Merrill v. Adkins, 131 Fla. 478, 180 So. 41."
 
 
 [3]
 
 "Special Meeting of Board of Directors Bruce's Juices, Inc.
 "A special meeting of the Board of Directors of Bruce's Juice's, Inc., a corporation under the Laws of the State of Florida, was held on the .... day of ................, 1946, at ........... o'clock in the forenoon at the offices of Bruce's Juices, Inc. pursuant to a waiver of notice signed by all the directors of said corporation holding office at the time of the meeting. There were present in person:
 J. Adams Bruce
 G. P. Peer
 "The President called the meeting to order and announced that due to the recent sharp decline in the market for canned citrus, the company had on its hands a large inventory of canned citrus juices and its other products which could not be sold at even its cost price, and, as a result, the company was greatly in need of ready cash to meet its current obligations. Due to the decline in the citrus market, banks and financial houses were unwilling to advance money to the citrus industry except when secured by disproportionate amounts of collateral and Bruce's Juices, Inc. is unable to post sufficient collateral to obtain additional bank loans.
 "In order to alleviate the situation for Bruce's Juices, Inc. and to supply the necessary and greatly needed cash, J. Adams Bruce has offered to buy 500 shares of Bruce's Juices, Inc. common stock at $20.00 per share. The money for the purchase of this stock has been raised by J. Adams Bruce by the placing of a mortgage on his home and residence in the City of Tampa and he is willing to purchase stock rather than take the company's notes and requiring it to bear the additional burden of interest on the indebtedness; although, of course, it is necessary for him to pay interest on the money borrowed on his home.
 "After discussion, the following resolution was, on motion made and seconded, unanimously passed:
 "Resolved: That Bruce's Juices, Inc. issue and sell to J. Adams Bruce 500 shares of the capital stock of Bruce's Juices, Inc. for the sum of $10,000 or a value of $20.00 per share. And, the officers of this corporation are hereby empowered and directed to issue said shares under the name and seal of this corporation and receive the money therefor.
 "There being no further business to come before the meeting, the same was, upon motion duly made, seconded and unanimously carried, adjourned.
 "J. Adams Bruce,
 President"
.................
 Secretary
 "Waiver of Notice
 "We, the undersigned, being all of the Directors of Bruce's Juices, Inc., a Florida corporation, do hereby consent and agree to the holding of the foregoing Directors meeting on the ...... day of ..................., 1946, at ...... o'clock in the forenoon at the offices of Bruce's Juices, Inc., in the City of Tampa, Florida, and hereby consent and agree to all business transacted at said meeting in all of which we participated, and we hereby waive all statutory and by-law requirements as to notice and publication of notice for holding said meeting.
 "C. Adams Bruce."
 
 
 [4]
 Wigmore, Evidence (3rd Ed.) § 1074(2):
 "No one doubted that the records of a meeting were receivable in proving the doings of the meeting. On the theory of the Parol Evidence rule * * * those records were the doings; i.e. as with judicial and legislative records, the votes of the meeting are supposed not to be `in pais,' or oral, but in writing; hence, in proving the acts of the meeting, as such, the acts are to be sought in the written records. Thus, the record is not somebody's hearsay testimony to the act; it is the act itself." See Owings v. Speed, 5 Wheat. 420, 423, 5 L.Ed. 124.
 
 
 [5]
 Cf. Fla.Stat.Ann. § 817.21, providing that in certain prosecutions books of "any corporation to which such person has access or the right of access" are admissible. The foundation to be laid may be less in criminal prosecutions where there is independent evidence of falsification of the books, as we recognized in Taylor v. United States, 5 Cir., 96 F.2d 16, 17:
 "In view of the fraudulent nature of the transactions, verity cannot be required of the records * * *, and since there is no reliable basis upon which they may be verified. Thus the exigencies of the case require that, in prosecutions of this kind, the books and records of the corporation, when produced by the officer or rightful custodian into whose possession they have regularly come, and when identified as such, are admissible * * *."