**UNITED STATES of America,**
**Appellant,**

v.

**Arthur L. SKOLNESS, also known as Art Skolness, Appellee (two cases).**

**Nos. 16277, 16278.**

United States Court of Appeals
Eighth Circuit.

June 14, 1960.

---

Connor F. Schmid, Asst. U. S. Atty., St. Paul, Minn., Fallon Kelly, U. S. Atty., St. Paul, Minn., Connor F. Schmid, St. Paul, Minn., on the brief, for appellant.

Gaylord A. Saetre, Moorhead, Minn., for appellee.

Before GARDNER, WOODROUGH, and VOGEL, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by the United States on behalf of the Commodity Credit Corporation to recover the balance due on a loan under the so-called 1954 Barley Loan and Purchase Agreement Program of the Commodity Credit Corporation, 7 U.S.C.A. § 1032. The principal amount of the loan was $12,-889.32. The note was secured by a chattel mortgage covering 11,612 bushels of barley raised by defendant in 1954 and stored in a new granary constructed by the defendant on his farm during the summer of 1954, specifically for the purpose of storing grain under the farm storage program of the Commodity Credit Corporation. The loan agreement between defendant and the Commodity Credit Corporation contained an optional provision which granted defendant the right either to pay the loan in cash or, in lieu thereof, to deliver the mortgaged

barley to the Commodity Credit Corporation at an agreed price of $1.11 a bushel. After the barley was stored in defendant's granary it developed that it was heating. This condition was reported by defendant to the proper representative of Commodity Credit Corporation. In order to remedy this situation it was proposed to remove part of the barley to a commercial facility authorized to receive grain for the Commodity Credit Corporation. Defendant then removed some 8,200 bushels of the barley and delivered it to the Fargo Grain Terminal at Fargo, North Dakota. The Fargo Grain Terminal collapsed on June 12, 1955 and the owner thereof failed to account for the barley to either the Commodity Credit Corporation or to defendant. Pursuant to authority of the Commodity Credit Corporation defendant, subsequent to the collapse of the Fargo Grain Terminal elevator, delivered 4,067.44 bushels of barley and received credit therefor on his loan at the rate specified in his loan agreement.

It was defendant's contention on the trial of the action that he was also entitled to credit on his loan for the 8,200 bushels delivered to the Fargo Grain Terminal. The plaintiff, however, contended that defendant had made an absolute sale of the 8,200 bushels of barley to the Fargo Grain Terminal and this was the issue of fact before the trial court. The court decided this issue in favor of the defendant and entered judgment dismissing plaintiff's complaint. The issue as to whether defendant had delivered the 8,200 bushels of barley to the Fargo Grain Terminal for storage for the Commodity Credit Corporation, or had made sale thereof on his own account as he was entitled to do under his loan agreement, was hotly contested and there was considerable conflict in the evidence and both parties relied to a considerable extent on the attending circumstances as proof of the divergent contentions of the parties.

The specific findings assailed are to the effect that defendant was given oral instructions by a representative of the Commodity Credit Corporation to deliver the grain to any authorized grain storage facility willing and available to receive the grain on behalf of the Commodity Credit Corporation and that thereafter defendant delivered to the Fargo Grain Terminal, an authorized grain warehouse facility, 8,246 bushels and 38 pounds, gross amount, of said barley; that said delivery was made with the knowledge and consent of the authorized representative of the Commodity Credit Corporation. The court concluded as a matter of law:

"I. That the delivery by the defendant of 8,246 bushels and 38 pounds of barley to the Fargo Grain Terminal of Fargo, North Dakota, and 3,991 net bushels to the Clay Center Cooperative Elevator at Glyndon, Minnesota, constituted delivery to the Commodity Credit Corporation of the entire 11,612 bushels of barley included in the mortgage given by the defendant to the Commodity Credit Corporation as security for the sum of $12,889.32 loaned to the defendant by the plaintiff.

"II. That the defendant delivered said grain in good faith, with the knowledge and consent of the local authorized representatives of the Commodity Credit Corporation and in substantial compliance with the terms and conditions of his loan agreement.

"III. That such delivery by the defendant constituted satisfaction in full of the defendant's indebtedness to the Commodity Credit Corporation."

On appeal, plaintiff contends, first, that the findings of the court are not sustained by substantial evidence and, second, that the court committed prejudicial error in excluding from evidence Exhibit 15 offered by the plaintiff.

■■ The findings of the court are presumptively correct and may not be set aside unless unsupported by substantial evidence, induced by an erroneous view of the law, or against the clear

weight of the evidence. As the defendant was the prevailing party we must, in considering the sufficiency of the evidence, view it in a light most favorable to him. We must assume that all conflicts in the evidence were resolved in favor of the defendant and he is entitled to all such favorable inferences as may reasonably be drawn from the evidence. If, when so considered, there was substantial evidence to sustain the findings, they may not be set aside by this Court. Rule 52(a), F.R.Civ.P., Title 28 U.S.C.; Rennicke et al. v. United States, 8 Cir., 207 F.2d 429; Wilson v. New York Life Ins. Co., 8 Cir., 250 F.2d 649.

■ There was, as has been observed, very considerable conflict in the evidence. There was evidence that defendant, on delivery of the barley to the Fargo Grain Terminal, received the usual scale tickets such as are delivered on purchase of grain. These tickets did not contain the name of the Commodity Credit Corporation or anything to indicate that the barley grain was being stored for its account. There was also evidence which the plaintiff claimed indicated that the barley delivered was at the time of its delivery worth $1.30 a bushel, whereas if the barley were stored under the provisions of the contract, defendant would receive only $1.11 a bushel. There was, however, testimony on behalf of the defendant that the barely was not prime nor malting barley and was not of a grade selling on the market at $1.30 a bushel, but there was evidence that defendant had written a letter to the representative of the plaintiff in which he claimed the barely delivered to the Fargo Grain Terminal had a market value of $1.30 a bushel, or words to that effect. The defendant, in his oral testimony, denied that the barley was worth $1.30 a bushel at the time of the delivery and testified that he in good faith delivered the barley to the Fargo Grain Terminal for storage and not as a sale. The trial court was, of course, the judge of the credibility of the witnesses and the weight to be given to their testimony. It is not our province to substitute our judgment for that of the trial court as to the probative force of the evidence and, without going into detail as to the evidence on this contested question of fact, we are of the view that it cannot be said that the findings are not sustained by substantial evidence.

■ It remains to consider the contention that the court committed prejudicial error in refusing to admit in evidence Exhibit 15 offered by the plaintiff. This exhibit reads as follows:

"Clay County ASC Office
*Art Skolness*
Barley Commodity        Loan No. 41-014-393-A
I will reseal . . . . . . . . . . . . . . . . . . . . . . . . . .
My loan was repaid on . . . . . . . . . . . . . . . .
I will repay my loan . . . . . . . .X. . . . . . . .
I desire to deliver 4000 bu. to Commodity Credit Corporation.
Name and address of Elevator where you wish to deliver Clay Center or Fargo Terminal
                    Signature Art Skolness."

———◆———

Defendant admitted that this exhibit was a form which he received, signed and filled out, and returned to the representative of the Commodity Credit Corporation. It was further identified through loan number and defendant's signature as the Notice of Intention form sent in the ordinary course of business to the defendant to be executed and returned to the office, and as a record of the Agen-

cy kept and maintained in the ordinary course of business. It was objected to on various grounds and the objection was ultimately sustained. As observed, the defendant admitted receiving the exhibit, he admitted that he signed it, and he admitted that he filled it out, including making the "X" by the repayment provision, and indicating that he would deliver 4,000 bushels of barley to the Commodity Credit Corporation. This exhibit was executed on his part after he had delivered the 8,200 bushels of barley to the Fargo Grain Terminal. By this exhibit defendant said in effect that he wished to repay his loan and that he wished to deliver the remaining 4,000 bushels. This statement, signed by him, was inconsistent with his claim that he had stored the 8,200 bushels with the Fargo Grain Terminal and, on the other hand, was consistent with the claim of the plaintiff that he had sold the barley delivered to the Fargo Grain Terminal. The exhibit indicated that he wished to repay his loan. This, too, was inconsistent with his claim that the 8,200 bushels had been stored for the Commodity Credit Corporation and was manifestly an admission against interest and on that ground was clearly admissible. Harrison v. Remington Paper Co., 8 Cir., 140 F. 385, 402, 3 L.R.A.,N.S., 954; Bruce v. McClure, 5 Cir., 220 F.2d 330; 4 Wigmore, Evidence (3rd Ed.), Sec. 1048, p. 2. In Harrison v. Remington Paper Co., supra, Judge Walter H. Sanborn, speaking for this court, said:

"But admissions of a party against his interest, inscribed upon the record books of a corporation, are as competent and persuasive evidence against him as though they were written elsewhere."

This Exhibit 15, admitted by defendant to have been executed by him, contained admissions against interest material to a vital question of fact in this case and we think its exclusion was clearly prejudicial. The judgment appealed from is therefore reversed and the cause is remanded to the trial court with directions to grant plaintiff a new trial.