**MONTGOMERY WARD & COMPANY,**
a corporation, Appellant,

v.

**Nellie Bell STEELE, Appellee.**

**No. 17823.**

United States Court of Appeals
Eighth Circuit.

Nov. 19, 1965.

---

15. See Eastman Kodak Co. v. Southern Photo Materials Co., footnote 12, supra.

Landon H. Rowland, Kansas City, Mo., for appellant, Robert B. Olsen, Kansas City, Mo., with him on the brief.

Richard K. Phelps, Lee's Summit, Mo., for appellee.

Before VAN OOSTERHOUT and RIDGE, Circuit Judges, and HENLEY, District Judge.

RIDGE, Circuit Judge.

In this jury-waived action, defendant appeals from a judgment for $4,000.00, entered in favor of plaintiff for personal injuries sustained as the result of a fall

while she was on the business premises of defendant. Diversity jurisdiction clearly appears in the record. For convenience, we refer to the parties as they appeared in the court below.

Defendant maintains and operates a retail store and mail order house in Kansas City, Missouri. The north end of the first floor thereof is at ground level. Outside, there is what is termed a "north loading dock." Inside, defendant maintains a "customer area" where its business customers are invited to "pick up" and "make return" of merchandise purchased from it. Adjacent to the "customer area" and underground, there is a north-south corridor extending through defendant's building for a distance of over 300 feet. On both sides of that corridor defendant maintains warehouse facilities and branches of its mail order operations. Midway in such corridor, there is a stairway leading to defendant's retail store maintained on the second floor of its building. It is within that corridor area that the plaintiff in the case at bar fell and was injured, at a time when she was walking toward the stairway above mentioned to reach defendant's retail store, under the circumstances hereinafter related. The extent of plaintiff's injuries not being a matter in dispute at the trial, we are not concerned therewith in this appeal.

On the date of her fall, plaintiff, seventy-five years of age, in company with her husband and one J. W. Seaton, arrived at defendant's premises at approximately 8:45 A.M., for the purpose of returning an electric hot water heater previously purchased from defendant and making exchange of the same for a gas hot water heater. After unloading the electric heater onto the "north dock," plaintiff, her husband and Seaton entered the "customer area" of defendant's premises. Upon so doing, they were informed by an employee of defendant that its retail store did not open until 9:30 A.M., but they could wait in chairs provided for customers in the "customer area." Plaintiff and her companions seated themselves accordingly. Shortly

thereafter, Seaton approached Charles Dashner, another employee of defendant. Seaton told Dashner the purpose of their presence. Dashner went out onto the "north dock" with Seaton and examined the heater to be returned. Thereafter, the two returned to the "customer area" where Dashner executed a "return receipt" for the heater and delivered the same to Seaton. Thereupon, Seaton asked Dashner if it would be all right if he, the plaintiff and her husband would go to the cafeteria in defendant's retail store for a cup of coffee and wait until the store opened. Dashner said, "Sure go ahead." Defendant contends Dashner then pointed toward a stairway located at the northeast corner of the customer area. Seaton testified he then told Dashner that he (Seaton) "knew the way to the cafeteria" as "he had been on the premises several times before." With that, Seaton returned to the place where plaintiff and her husband were seated in the customer area. Dashner proceeded to get a warehouse truck, and went onto the north dock to bring the electric heater inside.

After Seaton returned to the place where plaintiff and her husband were seated, he said, "Let's go upstairs and have a cup of coffee." The three started walking down the corridor ante, toward the stairway located therein. No employee of defendant saw them enter or walking in the corridor. There were no signs or other notice posted in the customer area, or in the corridor, warning business customers of defendant that such corridor was off limits or giving direction to the entrance to be used to reach its retail store. The evidence establishes that a business customer of defendant being seated in the customer area, as was plaintiff in the case at bar, would be facing the corridor area above mentioned.

From appearance, a person so seated reasonably might consider the corridor to be a passageway from a "customer area" to the retail store of appellant. Seaton, during previous visits to appellant's premises, had used the corridor area and stairway located therein several

times to go to appellant's retail store and had never been deterred or restrained from so doing. There was evidence before the court below that prior to the time of plaintiff's fall and injury, other business customers of appellant had also used such corridor and the stairway therein to gain access to the retail portion of defendant's premises. After walking about 150 feet down the corridor in an ordinary manner, plaintiff's foot slipped from under her, causing her to fall and be injured.

The trial court, by specific findings of fact, among others, found:

"3. The plaintiff's fall was caused by an oily sweeping compound left on the floor where plaintiff fell, by a servant of the defendant and that sweeping compound made the floor slippery and unsafe to walk upon.

"4. The corridor in the defendant's warehouse on which the plaintiff and her companions were proceeding had been used in the past by other customers and by the plaintiff's companions to gain access to the retail portion of the defendant's store.

\* \* \* \* \* \*

"6. The plaintiff or her companions had been told it would be all right to proceed along the north-south corridor to get to the retail portion of the defendant's store.

"7. At the time the fall occurred, approximately one half of the electric lights providing light for the area in which the plaintiff fell were not on, and combined with the dark green color of the (corridor) floor, provided inadequate lighting for the safety of defendant's customers.

"8. That there were no signs or barriers prohibiting the entry of customers into the north-south corridor where the plaintiff fell."

It is manifest from the record before us that this case was tried and submitted to the court below on the theory that an implied invitation was held forth and extended to plaintiff and her companions to use the corridor in question as a passageway to reach defendant's retail store and cafeteria located on the second floor of its premises.

■ Defendant in this appeal does not contend that the findings of fact, ante, are not supported by competent evidence adduced at the trial of this case. Its primary assignments of error are stated as follows:

"I. The trial court erred in holding that plaintiff was an invitee at the time and place of her fall \* \*."

In support thereof, it asserts:

"A. The appearance of the warehouse aisle put plaintiff on notice that it was off-limits to customers.

"B. Plaintiff's use of the warehouse before defendant's business hours was not within the scope of defendant's invitation to its customers.

"C. Plaintiff was directed, both before and after her fall, to use the northeast stairs instead of the warehouse aisle.

"D. Defendant's custom and practice was to exclude customers from its warehouse.

"E. The trial court erred in ruling that defendant's custom and practice were not binding on plaintiff, and in excluding evidence of such custom and practice.

"II. The evidence does not support the trial court's finding that defendant was negligent in failing to warn plaintiff of sweeping compound on the floor of defendant's premises and that defendant's negligence was the cause of plaintiff's injuries."

In support thereof, appellant argues:

"A. Plaintiff failed to show that she had no knowledge of an allegedly dangerous condition on defendant's premises.

"B. Even if defendant was negligent in failing to warn plaintiff of a dangerous condition, the evidence

was insufficient to prove plaintiff's injury was caused by such negligence."

"III. The trial court erred in concluding that plaintiff was not contributorily negligent because she observed the allegedly dangerous condition, she fell easily and she deviated from the safe path to which she had been directed." [1]

In light of the findings of fact as made by the court below and defendant's assignments of error, ante, we think the first matter that should here be made clear is: Defendant in this appeal concedes "that plaintiff and her party were (business) invitees of defendant" at the time they entered and were in the "customer area" of its premises as above related; and that the primary question presented in this appeal is whether at the time and place of her fall and injury plaintiff "exceeded the area of invitation" extended to her by defendant as a "business customer."

■ In any consideration of that matter, it should be kept in mind that under Rule 52(a), F.R.C.P., 28 U.S.C.A., defendant has the burden to clearly demonstrate that error exists in the findings of fact as made by a trial court. Such findings are presumptively correct and cannot be set aside on appeal unless clearly erroneous. The defendant has the burden of clearly demonstrating that matter before this court. (Manning v. Jones, 349 F.2d 992 (8 Cir., Aug. 1965). Rule 52(a), supra, has been the subject of discussion in numerous cases decided by the Supreme Court of the United States and this court. In United States v. United States Gypsum Co., 333 U.S. 364, at page 395, 68 S.Ct. 525, at page 542, 92 L.Ed. 746, it is stated: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is

left with the definite and firm conviction that a mistake has been committed." In Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695, 697, this court said:

"The findings of fact of a trial court should be accepted by this Court as being correct unless it can be clearly demonstrated that they are without adequate evidentiary support or were induced by an erroneous view of the law."

■ In determining whether there is evidence to support the findings of a trial court we must view the evidence in the light most favorable to the prevailing party, here the appellee.

■ Further, in a diversity case where local law controls, it must be remembered that this court does not formulate State law. The time-honored standard to be applied to such cases is aptly stated in Dierks Lumber & Coal Co. v. Barnett, supra, l. c. 697, as follows:

"It must be remembered that this Court is not an appellate court of the State of (Missouri) and establishes no rules of law for that State. The question for review in a case such as this is not whether the trial court has reached a correct conclusion, but whether it has reached a permissible one." (Citing cases.)

The sum and substance of defendant's contention before us is that as a matter of Missouri law, plaintiff while "using the warehouse aisle (i. e. the corridor) to reach (its) cafeteria for a cup of coffee" and to wait "until its retail store opened" was a mere "licensee" in that part of its premises where she fell, to whom defendant's only obligation was not to intentionally injure her. It is defendant's assertion that is so because from "appearance (its) warehouse aisle" (i. e. corridor) was such as to put plaintiff "on notice that it was off limits to its

---

1. By its reply brief defendant seeks to enlarge the original submission as made in this case; but that cannot be done. Issues submitted in appellant's brief on original submission cannot be enlarged by presentation made in a reply brief. See,

State of California ex rel. Houser v. St. Louis Union Trust Co., 260 S.W.2d 821; Palmer v. R.F.C., 2 Cir., 164 F.2d 466, cert. den. New York, N. H. & H. R. Co. v. R. F. C., 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742.

customers." From that singular premise defendant asserts that as a matter of Missouri case law the court below erred in rendering judgment in favor of plaintiff as it did, supra.

In support of the above contention, appellant cites and relies on Missouri case law as considered and declared in Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 17 (en banc, 1909); Menteer v. Scalzo Fruit Co., 240 Mo. 177, 144 S.W. 833, 836 (1912); Walters v. Markwardt, Mo., 237 S.W.2d 177, 179 (1951); Barry v. Calvary Cemetery Association, 106 Mo. App. 358, 80 S.W. 709 (St.L.Ct. of App., 1904); and Gayer v. J. C. Penney Co., 326 S.W.2d 413 (St.L.Ct. of App., 1959).

We need not here review the specific rule of decision as made by Missouri appellate courts in the above-cited authorities. We deem it sufficient to note that in the Restatement of the Law of Torts, Missouri Annotations, at § 331, it is reported:

"(Missouri decisions) do not divide licenses into * * * two classes (gratuitous licensees) and * * * (business visitors). Instead, the classification is into bare or permitted licensees and invited licensees. The leading cases are Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1 * * * (1909); Kennedy v. Phillips, 319 Mo. 573, 5 S.W.2d 33 (1928) (citing many decisions). * * * But see attempt to follow Restatements classification of gratuitous licensees in Smith v. Southwest Missouri R. Co., 333 Mo. 314, 62 S.W.2d 761 (1933). (There, a) business visitor is placed under the classification of invited licensees. * * * Furthermore, an examination of the cases seems to limit invited licensees to those whom the Restatement designates as business visitors under § 332. In these cases of invitation, the invitee has been on the premises of the possessor for business purposes. Therefore, in spite of the broad use of the term 'invitation' in (Missouri) decisions it seems that the adjudicated cases may not be inconsistent with the classification * * * (as declared in Restatement of the Law, Torts 2d, Chapter 13, 'Liability of Possessors of Land to Persons on the Land' § 328E–§ 332)."

There it is said, in part (Vol. 2, pp. 182–183):

"The mere fact that the possessor knows that invitees in general, or a particular invitee, will be likely to go into parts of the premises to which he is not invited, is not enough in itself to bring such places within the area of invitation, *unless the visitor is reasonably led to believe that he is so invited. An invitation usually includes the use of such parts of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his purpose is to be carried out. If the possessor has intentionally or negligently misled him into the reasonable belief that a particular passageway or door is an appropriate means of reaching the area of his invitation, the visitor is entitled to the protection of an invitee when he makes use of it. Likewise, if the possessor should realize that either one of two doors might be taken by the visitor to be the door to the area of invitation, the visitor may be entitled to the status of an invitee even though by mistake he enters the wrong door. In such a case the possessor, knowing the likelihood of a mistake, must take the risk incident to his failure to indicate the proper door.*

"*Since the status of the visitor as an invitee may depend upon whether the possessor should have known that the visitor would be led to believe that a particular part of the premises is held open to him, the question is often one of fact for the jury * \*.*"

From our examination of applicable Missouri case law as cited and relied on by both parties in this appeal, we consider the above statements, as contained in the

Restatement of the Law of Torts, ante, to be a fair, general analysis and appraisal of applicable Missouri law to the facts and issues as raised in the case at bar.

In the light of the foregoing, we do not follow defendant in all the presentation it makes in this appeal, as to what it considers applicable Missouri law to be, in relation to the particular facts appearing in the record before us. We say that, first, because it clearly appears that the court below did not consider Glaser v. Rothschild, supra, and Menteer v. Scalzo Fruit Co., supra, relied on by defendant, as controlling the operative facts appearing in the record of this case. What the court below did was to consider Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410; Hiken v. Wilson's Shoes, 317 S.W.2d 673 (Mo. App.); and Howard v. Johnoff Restaurant Co., 312 S.W.2d 55 (Mo.), and other Missouri case law therein cited, as declaring applicable law to the particular facts as found by it; and on the premise of those cases ruled that an "implied invitation" was extended to plaintiff as a business customer of defendant to use the "corridor" where she slipped and fell, under the particular facts as found by it.

■ In making that determination, it is apparent from the record that the court below considered the issue here to present mixed questions of law and fact. That the area of invitation extended to a business visitor is obviously a factual matter which will vary with the circumstances appearing in each case, is ruled in Main v. Lehman, 294 Mo. 579, 243 S.W. 91 (1922). That same proposition is also established in Happy v. Walz, supra, followed by the court below in reaching the factual conclusion it did in the case at bar. There, it is said, at l. c. 414, of 213 S.W.2d:

"An implied invitation is 'one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering (his premises) that his entry and use of the property (thereof) is consistent with the intentions and purposes of the owner or occupant, and leads (one) to believe that (his) use (of the premises) is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest.' " (Pars. added.)

■ Since defendant in this appeal does not by its assignment of error, ante, make any claim that there was insufficient evidence in the record before us from which the court below could reasonably find as it did, we must accept its findings of fact, supra, as being conclusive. Appellant, in the course of its argument, boldly asserts that "there is no evidence, whatsoever, to support the Findings of Fact" so made by the court below, but does not otherwise demonstrate that matter. When the record before us is fairly and impartially considered as a whole, we think such assertion is without merit. The conversation Seaton had with defendant's employee Dashner, as above related, is a sufficient factual setting to sustain the findings of fact as made by the court below, supra. Manifestly, from the memorandum opinion of the District Court, filed in relation to its specific findings of fact, supra, it is apparent that it considered Dashner's statement, "Sure, go ahead," as being a specific consent given by the only employee of defendant Seaton was then doing business with, for plaintiff and her companions to use such corridor for the purpose requested. So considered, that fact—contemplated and weighed in the light of Seaton's testimony that he and other business customers of defendant previously made use of the corridor—could reasonably be deemed specific consent to plaintiff to use the corridor, as found by the court below.

In the light of the foregoing, and the Missouri case law as considered in Main v. Lehman, supra; Bowyer v. Te-Co., Inc., 310 S.W.2d 892 (Mo., 1958); and Cannon v. S. S. Kresge Co., 233 Mo.App. 173, 116 S.W.2d 559 (K.C.Ct. of App., 1938), we can find no merit in appellant's contention that, as a matter of law, from "ap-

pearance of the warehouse aisle" here considered, "plaintiff was put on notice that it was off-limits to its customers."

Under its Assignment of Error II, ante, defendant argues that (A) "Plaintiff failed to show that she had no knowledge of an allegedly dangerous condition (existing) on defendant's premises" and (B) "Even if defendant was negligent in failing to warn plaintiff of a dangerous condition" as the District Court found, "the evidence was insufficient to prove plaintiff's injury was caused by such negligence."

 There was testimony in the case at bar to the effect that because of the dark condition existing in the underground corridor, it was necessary to use artificial lighting therein. The court below specifically found that at the time of plaintiff's fall, there was "inadequate lighting" in the corridor "for the safety of defendant's customers." There was evidence before the court to the effect that after plaintiff fell, the lighting was such that Seaton had to slump down to a crouching position before he could observe the "green particles of sweeping powder on the floor" such as would be left by a broom after sweeping. There is ample evidence in the record of this case to sustain the trial court's finding that such condition was the proximate cause of plaintiff's fall. The lighting condition in the corridor was specifically found by the court below to be inadequate to reveal the dangerous condition that existed therein. The only reasonable inference to be made from the facts as found by that court is, plaintiff's fall was caused when her foot slipped out from under her, when she stepped on a residue of sweeping compound; and that Dashner, defendant's employee, negligently caused the same to remain on the floor. Under the facts here, we can find no merit in defendant's contention that the dangerous condition existing in the corridor could reasonably have been discovered by the plaintiff as a matter of law. Cf. Van Brock v. First National Bank of St. Louis (1942), 349 Mo. 425, 161 S.W.2d 258.

By its memorandum opinion, the court below made it clear that it was of the opinion that the defendant was negligent in the factual situation here because of a combined situation, i. e. a residue of sweeping compound left on the floor, and the lighting in the corridor was inadequate. As a consequence, that court specifically found "that this negligence was the direct and proximate cause of the plaintiff's injuries." In the light of Missouri case law, we are of the opinion that such was a reasonable conclusion that could have been made from the proof as adduced before it. Cf. Bullock v. Safeway Stores, 236 F.2d 29 (8 Cir., 1956); Vogrin v. Forum Cafeterias of America, 308 S.W.2d 617 (Mo., 1957); Sears, Roebuck & Co. v. Scroggins, 140 F.2d 718 (8 Cir., 1944).

There was evidence in this case to the effect that Joseph Lutes, appellant's retail warehouse manager, had knowledge that because there were no guards, or signs, or banners between the customer area and the warehouse area; and the immediate opening of the corridor here considered was adjacent to defendant's "customer area," its business customers did wander down the corridor, for the purpose of using the same as a passageway to its second floor retail store. Defendant contends it was its invariable custom and practice when such customers did so wander from the "customer area" for that purpose, for some warehouse employee to accost the customers and direct them to use the northeast stairway, and not the stairway located in the center of the corridor, as a passageway to its retail store. Nevertheless, there was testimony from which the court below could find that all such business customers were *not* so warned. The court below rejected all such testimony on the ground that no showing was made, or attempted to be made, by defendant that plaintiff reasonably knew or had means of knowledge of such claimed custom. It is appellant's contention that rejection of its offer of proof constitutes reversible error. This, solely on the theory that "the corridor where plaintiff fell, by

appearance, was off-limits" to its business customers.

■ That the above custom and practice by defendant, if it existed, could not legally be binding on plaintiff is clearly established by Missouri authorities cited in Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79. See also 25 C.J.S. Customs and Usages § 9, pp. 82–85. If the defendant so arranged its premises that the customer area and corridor were such as to lead plaintiff reasonably to believe that the latter portion of its premises was within the area of invitation appellant held open to persons doing business with it, plaintiff, under Missouri law, was an invitee as to that part of its premises where she fell, even though defendant did not mean to invite plaintiff therein. Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679. Cf. Harper and James, "The Law of Torts," § 27.12, pp. 1486; 65 C.J.S. Negligence § 43(3), p. 510.

■ As above noted, defendant does not here contend that the findings of fact as made by the court below are clearly erroneous. Such findings of fact are binding on this court; and on appeal we must assume that the facts as found by the court below and all inferences reasonably deducible therefrom, are supported by the evidence, absent any specific assignment of error contra. We cannot set them aside if there is any substantial evidence to sustain them. Fremont Cake & Meal Co. v. Wilson & Co., 183 F.2d 57 (8 Cir., 1950). In the trial of a case to the court without a jury, the presumption is that the trial court considered only competent evidence and disregarded all evidence which was incompetent. Thompson v. Baltimore & Ohio R. Co., 8 Cir., 155 F.2d 767, cert. den. 329 U.S. 762, 67 S.Ct. 122, 91 L. Ed. 657 (1946). We may not substitute our judgment as to the probative facts in a non-jury trial for those as found by the trial court. United States v. Skolness, 279 F.2d 350 (8 Cir., 1960); Fields v. Ross Oil Co., 250 F.2d 498 (8 Cir., 1957). As said in Cleo Syrup Corp.

v. Coca-Cola Co., 139 F.2d 416, 417 (8 Cir., 1943):

"This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. (Citing cases.) The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly. (Citing cases.) In a non-jury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. (Citing cases.)"

From the record here, we cannot rule as a matter of law that the findings of fact as made by the trial court are clearly erroneous.

■ What defendant most ardently argues in this appeal is that because of a "physical infirmity of plaintiff, she knew she was prone to fall. That she should have had knowledge that in voluntarily walking down the warehouse aisle" she would probably fall, and as a consequence, she had as much "knowledge of the dangerous condition" in the corridor as did the defendant. From that premise, the defendant argues matters of contributory negligence on the part of plaintiff. Manifestly, contributory negligence of the plaintiff under the facts of this case was a question of fact for consideration by the trier of the facts and such is not a subject for review by this court when sustained by competent evidence. As an appellate court, we do not weigh the evidence in a case submitted to us for review.

All that defendant asserts in relation to its Assignments of Error II and III, ante, is argumentative in character;— to the effect that defendant was not an insurer of the safety of its business invitees while on its premises; that the condition appearing in the corridor of its premises which plaintiff claims was the cause of her fall, was as open and visible to plaintiff as it was to defendant. Ap-

pellant's contention, that "there was *no* evidence that defendant \* \* \* had superior knowledge of the condition" existing in the corridor, is wholly without merit. We are of the opinion that there was substantial evidence before the court below to sustain the findings of fact as made by it, supra. They may not be set aside by this court unless clearly erroneous; which they are not. Rule 52 (a), supra; Rennicke, et al. v. United States, 207 F.2d 429 (8 Cir., 1953); Wilson v. New York Life Insurance Co., 250 F.2d 649 (8 Cir., 1958).

The findings of fact as made by the trial court in the case at bar are amply supported by the facts appearing on the face of the record of this case. Its conclusions of law are not challenged by defendant.

The judgment appealed from is, therefore, affirmed.